## WARD BAKING CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Second Circuit.   February 26, 1920.)

### No. 90.

Commerce ⬛⇒40(1)—Sales by agents from wagons sent across state line not interstate commerce.

> Where a baking company sends its wagons across a state line in charge of its drivers, who call on retail dealers and then and there sell and deliver bread to them, the sales do not constitute interstate commerce, subject to regulation by the Federal Trade Commission.

Petition to Review Order of Federal Trade Commission.

Proceeding before the Federal Trade Commission against the Ward Baking Company.   On petition to review an order of the Federal Trade Commission.   Order reversed.

Eugene H. Hickok, of New York City, for petitioner.

Edward L. Smith (Claude R. Porter and W. T. Roberts, both of Washington, D. C., of counsel), for respondent.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge.   November 26, 1917, the Federal Trade Commission filed a complaint under section 5 of the act of September 26, 1914 (Comp. St. § 8836e), entitled "An act to create a Federal Trade Commission, to define its powers and duties and for other purposes," against the Ward Baking Company on the ground that the company had at periods of several consecutive days in the year 1917 given gratis to each purchaser of its bread in certain places a quantity of bread equal to the amount of the purchase with the intent of suppressing competition in the manufacture and sale of bread in interstate commerce and that a proceeding by the commission in respect thereof would be to the interest of the public.

The company filed an answer, denying this charge, appeared, and offered testimony at the hearing.   The commission made a report and findings, of which the material finding for the purposes of this opinion is:

"Paragraph Three. That respondent, during the said month of May, in the year 1917, for a period of about four weeks, in the cities of New Bedford and Fall River, in the state of Massachusetts, and other towns and cities in said state, and also in the towns of North Tiverton and Stone Bridge, in the state of Rhode Island, did give to all who purchased bread from it an amount of bread equal to the amount so purchased, with the intent and purpose of suppressing and stifling competition in the sale of bread in the towns and cities named in the state of Massachusetts and the state of Rhode Island, and that all bread so sold and given away in the state of Rhode Island, during said period when said free bread campaign was being so conducted, was manufactured at the city of Cambridge, in the state of Massachusetts, and shipped by the said respondent from the city of Cambridge to the city of Fall River, both in the state of Massachusetts, and from said city of Fall River was distributed by wagons, trucks, and other conveyances across the state line and into the state of Rhode Island, in the vicinity of North Tiverton and Stone Bridge, and there given away to purchasers of bread from said respondent in the manner and form aforesaid, and that said bread so

given away and distributed in the state of Rhode Island was transported and sold in interstate commerce across the state lines dividing the state of Massachusetts and the state of Rhode Island, for the purpose and with the effect of stifling and suppressing competition in interstate commerce as aforesaid."

This method of competition the commission held to be unfair. September 2, 1919, the commission entered an amended order requiring respondent to desist from the practice:

"Now, therefore, it is ordered that the respondent, Ward Baking Company, its officers, directors, agents, servants, and employés, cease and desist from directly or indirectly initiating or carrying on, in the course of interstate commerce, any so-called free-bread campaign, or any practice of supplying bread free of cost to retail dealers in quantities equal to those purchased from respondent by such dealers, or in any other quantities, where such practice is calculated to or does stifle or suppress competition in the manufacture and sales of bread."

It appeared from the testimony that the respondent transported the bread in question in its own wagons from Fall River, Mass., to Tiverton and Stone Bridge, R. I.; their wagons calling at the retail stores in those places, and their drivers then and there selling the respondent's bread to such storekeepers as wanted to buy, and then and there delivering additional bread gratis to the purchaser.

Doubtless bread sold in Massachusetts to be delivered to the purchaser in Rhode Island would be interstate commerce, but that is not this case. Moreover, the commission is not finding the act of transportation from Massachusetts to Rhode Island unfair, but the method of local sales made in Rhode Island. If the respondent had its own stores in Rhode Island, and carried to them from Massachusetts bread to be there sold, this method of selling could not be considered interstate commerce.

The question arose in respect of the right of the city of Covington, a municipality of Kentucky, to impose a license tax upon the business of an Ohio corporation making sales in exactly this way in Kentucky. The Supreme Court held that such sales were subject to the tax, and not invalid as a regulation of interstate commerce. Wagner v. City of Covington, 251 U. S. 95, 40 Sup. Ct. 93, 64 L. Ed. —— (December 8, 1919). Mr. Justice Pitney said (251 U. S. at pages 99 and 103, 40 Sup. Ct. at pages 93 and 95 (64 L. Ed. ——):

"Plaintiffs were and are manufacturers of such drinks, having their factory and bottling works in the city of Cincinnati, in the state of Ohio, on the opposite side of the Ohio river from Covington. They have carried on and do carry on the business of selling in Covington soft drinks, the product of their manufacture, in the following manner: They have a list of retail dealers in Covington to whom they have been and are in the habit of making sales. Two or three times a week a wagon or other vehicle owned by plaintiffs is loaded at the factory in Cincinnati and sent across the river to Covington, and calls upon the retail dealers mentioned, many of whom have been for years on plaintiffs' list and have purchased their goods under a general understanding that plaintiffs' vehicle would call occasionally and furnish them with such soft drinks as they might need or desire to purchase from plaintiffs. When a customer's place of business is reached by the vehicle, the driver goes into the storeroom and either asks or looks to see what amount of drinks is needed or wanted. He then goes out to the vehicle and brings from it the necessary quantity, which he carries into the store and delivers to the customer. Upon his trips to Covington he always carries sufficient

drinks to meet the probable demands of the customers, based on past experience; but, with the exception of occasional small amounts carried for delivery in response to particular orders previously received at plaintiff's place of business in Cincinnati, all sales in Covington are made from the vehicle by the driver in the manner mentioned. *  *  *

"Of course the transportation of plaintiffs' goods across the state line is of itself interstate commerce; but it is not this that is taxed by the city of Covington, nor is such commerce a part of the business that is taxed, or anything more than a preparation for it. So far as the itinerant vending is concerned, the goods might just as well have been manufactured within the state of Kentucky; to the extent that plaintiffs dispose of their goods in that kind of sales, they make them the subject of local commerce; and, this being so, they can claim no immunity from local regulation, whether the goods remain in original packages or not."

As interstate commerce is not involved, the order is reversed.