**FEDERAL TRADE COMMISSION v. SMITH et al.**

District Court, S. D. New York. July 18, 1929.

. Charles H. Tuttle, U. S. Atty., of New York City (Thomas J. Crawford, Asst. U. S. Atty., of New York City, of counsel), for petitioner.

324

Robert E. Healy and Adrien F. Busick, both of Washington, D. C., for Federal Trade Commission.

Simpson, Thacher & Bartlett, of New York City, and John F. MacLane, of Salt Lake City, Utah (John W. Davis and Louis Connick, both of New York City, of counsel), for respondents and Electric Bond & Share Co.

KNOX, District Judge. █ For the purpose of the decision to be made upon this application of the Federal Trade Commission for an order which will direct A. E. Smith to attend before the commission, and there to produce the operating expense ledgers and certain other papers of the Electric Bond & Share Company, it will be assumed that such corporation, as to a part of its business, is engaged in interstate commerce, and is thus within the provisions of the Federal Trade Commission Act of September 26, 1914 (15 USCA §§ 41–51). Furthermore, my opinion is that the commission, in the exercise of the powers of investigation, which are conferred upon it by subdivisons (a) and (d) of section 6 of the act (15 USCA § 46(a)(d), may compel the *personal* attendance of such witnesses as may be regarded as able to furnish information concerning the subject-matter which the commission has under investigation, and that such witnesses, when called, may be required, subject to their constitutional immunities, to testify concerning their knowledge of such subject-matter as is within the jurisdiction of the commission. McGrain v. Daugherty, 273 U. S. 135, 47 S. Ct. 319, 71 L. Ed. 580, 50 A. L. R. 1.

In connection with the adjudication just cited, attention must be had to the statement of Justice Van Devanter on page 153 of the report (47 S. Ct. 321), in which he said: "It will be observed from the terms of the resolution that the warrant [calling for the arrest of Daugherty] was to be issued in furtherance of the effort to obtain the personal testimony of the witness, and, like the second subpœna, was not intended to exact from him the production of the various records, books, and papers named in the first subpœna." Had Daugherty's alleged contumacy been based upon the first subpœna that the Senate directed to him, it is open to doubt if the Supreme Court would have sustained the process. The first subpœna was open to the objection that it was, in effect, a general warrant, and was bad under the decision of Federal Trade Commission v. American Tobacco Co., 264 U. S. 298, 44 S. Ct. 336, 68 L. Ed. 696, 32 A. L. R. 786.

█ With this latter case, and that of Harriman v. Interstate Commerce Commission, 211 U. S. 407, 29 S. Ct. 115, 53 L. Ed. 253, in mind, I think the duces tecum subpœnas of the petitioner which have issued to the present respondents are not to be sustained. The Congress has not, as yet, undertaken to regulate the interstate carrier of electricity in the same way as interstate common carriers are now supervised and controlled, and the legislative right of the Federal Trade Commission to investigate companies, which are engaged in the transmission of electric current over state boundaries, or the holding corporations, by which the activities of the producing companies are directed, and which, as a result may be also engaged in interstate commerce, is hardly comparable with that of the Interstate Commerce Commission with respect to interstate common carriers. See Smith v. Interstate Commerce Commission, 245 U. S. 33, 38 S. Ct. 30, 62 L. Ed. 135.

█ Until the powers of petitioner with respect to such inquiries as it may undertake shall have been enlarged by appropriate statutes, the present limitations which hedge about its inquisitorial functions must be recognized. One of them is that until particular documents, including books, become evidentiary, respondent corporation is not obligated to lay before the commission its books and papers for scrutiny in "an investigation to ascertain whether the anti-trust laws have been violated, and to report facts to Congress on a subject over which it has legislative jurisdiction and concerning which it has directed the Commission to report." (Petitioner's brief, p. 83).

The company is within the protection afforded by the Fourth Amendment to the Constitution. So far as is shown by the present papers, the books and vouchers that are sought by petitioners relate not alone to interstate business of the Electric Bond & Share Company, but to its intrastate business as well. And even as to interstate business, petitioner, in the absence of a well-founded basis, cannot say to a suspected corporation, "Stand and deliver the possible evidences of the crime of which you are suspected." Federal Trade Commission v. American Tobacco Co., supra; Federal Trade Commission v. Baltimore Grain Co. (D. C.) 284 F. 886, affirmed 267 U. S. 586, 45 S. Ct. 461, 69 L. Ed. 800. A time may come when petitioner will have established the reasonableness of a demand for particular papers or books from Electric Bond & Share Company, but it does not appear to have arrived. So far, the suggestion that the corpo-

ration may, perhaps, have violated the antitrust laws, rests only on hearsay or suspicion. ▮ In stating what has been said, the court is not at all unmindful of respondent's vigorous contention that petitioner is without authority, in conducting an investigation under subdivison (a) of section 6 of the Trade Commission Act, to resort to the process of subpœna. In support of the argument, my attention has been called to the history of the legislation, and the decision of Justice Smith of the Supreme Court of the District of Columbia in Miller's National Federation et al. v. Federal Trade Commission, in which he held that the commission is without power to "issue or serve subpœnas or to compel witnesses to attend or testify or to exact the production of documentary evidence until it has proceeded against the corporation by taking the action set out in section 5" of the act. My thought is also directed to a number of other decisions, from which I am asked to reach the conclusion expressed by Justice Smith.

The point which respondents thus seek to establish is so enshrouded by the mists of legislative arguments, prior decisions, and present controversies that a volume might easily be written in an effort to disperse them. But I have neither the time nor disposition to do do. It must suffice to say that respondent's argument in the premises has been carefully considered and found unpersuasive. By way of brief response to the point advanced by respondents, it may be said that the commission's declared power to require by subpœna the attendance and testimony of witnesses, and the production of documentary evidence relating to a matter properly under *"investigation,"* is an illusion, unless it comprehends investigations such as are contemplated by subdivisions (a) and (d) of section 6 of the act. Investigations of the characters there specified are within the "purposes" of the act.

Such seems to have been the intention of the committees of Congress which had the Trade Commission bill in charge before its enactment into law. When the bill was in conference, there appears to have been a good deal of trading back and forth between the conferees upon the phraseology of its provisions. But this circumstance, as I conceive it, constitutes no license to this court to disregard the natural effect of the language contained in the bill on final passage, and the avowed object of the legislation. So far as I can see, there was no constitutional barrier to the grant to the commission of the power to use compulsory process in its lawful investigations. Petitioner, of course, must not abuse the process, but, with this restriction, I am satisfied that it can be used in an "investigation" which has not ripened into a proceeding under section 5 of the act (15 USCA § 45), and which may be of aid to the Congress in considering legislation that is within the scope of its authority.

As a result of the views hereinbefore set out, respondent's objections to the subpœnas duces tecum will be sustained, and those that were interposed to the pertinent and competent questions propounded to the individual witnesses will be overruled. As was said at the outset, I have assumed that the Electric Bond & Share Company is, in part at least, engaged in interstate commerce.

If respondents wish to contest the propriety of this assumption, the matter will have to go to a master, or, if petitioner wishes an adjudication to the effect that the interstate business of the Electric Bond & Share Company is so intimately associated and connected with interstate commerce that all the company's activities are subject to the jurisdiction of the commission, a reference will be required to establish the fact.