GENERAL TOBACCO & GROCERY CO. v.
FLEMING, Administrator of Wage
and Hour Division.

No. 8872.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1942.

Victor W. Klein, of Detroit, Mich. (Butzel, Eaman, Long, Gust & Bills, Victor W. Klein, and J. Burgess Book, III, all of Detroit, Mich., on the brief), for appellant.

Abner Brodie, of Washington, D. C. (Gerard D. Reilly, Irving J. Levy, Robert S. Erdahl, and David Persinger, all of Washington, D. C., and Aaron A. Cohen, of Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

The Administrator of the Wage and Hour Division of the United States Department of Labor applied to a United States District Court for an order directing appellant, General Tobacco and Grocery Co., of Detroit, Michigan, to show cause why a court order should not issue requiring appellant to produce books, records, documents and papers demanded by subpoena duces tecum, upon allegation of the previous refusal of appellant to produce its books and records at a designated time and place in obedience to an order of a duly qualified representative of the Administrator who was investigating the alleged violation by appellant of the Fair Labor Standards Act of 1938. U.S.C.A., Title 29, Sec. 201, 52 Stat. 1060.

The petitioning Administrator averred, *on information and belief,* that appellant was engaged in interstate commerce.

In response to the show-cause order issued by the district court, appellant appeared "for the purpose of objecting to the jurisdiction of the court over the subject matter of the controversy" upon the ground that appellant is not engaged in interstate commerce, or in the production of goods for interstate commerce; and that, under the Fair Labor Standards Act, the Administrator lacks power or authority to investigate or inspect the records and books of employers not so engaged. The positive averment was made that appellant "and its employees are engaged solely in the business of selling and distributing groceries, candies, tobaccos, and food products at wholesale to retailers, all of which sales and distribution are made by the respondent and its employees wholly within the State of Michigan, principally within the metropolitan area of the City of Detroit, Wayne County, Michigan."

The appellant further answered that "the major portion of goods purchased by it for subsequent re-sale and distribution is purchased from manufacturers or sellers who operate within the State of Michigan and who deliver such goods to the warehouse of this respondent from places of business operated by such sellers located within the State of Michigan and that with respect to the remaining small portion of the goods purchased by this respondent such goods are shipped from without the State directly to the warehouse of this respondent in the State of Michigan and commingled with other goods owned by the respondent and come to rest at the warehouse of this respondent before they are re-sold to respondent's customers or are shipped to such other point in Michigan designated by respondent."

The answer asserted that, inasmuch as appellant is not subject to the provisions of the Fair Labor Standards Act, there were no reasonable grounds upon which the Regional Director, acting in behalf of the Administrator, could base her order for investigation and taking testimony, or base her belief that the appellant had violated the provisions of an Act to which it was not subject under the express limitations of the law.

Prior to the issuance of the administrative order and subpoena duces tecum, appellant's attorney addressed to the Wage and Hour Division of the Department of Labor a letter, which is incorporated in its answer, in which the *intrastate* and local character of appellant's business was urged. The letter concluded:

"We understand that it is your contention, notwithstanding the United States Supreme Court decision in the N. R. A.—Schechter decision and other Supreme Court decisions on the subject, that the wholesalers are subject to the Act even though they sell and distribute goods wholly within a state if any part of the goods purchased by the wholesaler is shipped to them from outside of the state. We are cited no authority or other decision on this point, and I have been unable to find a single court decision on this subject which would sustain this view.

"Our clients are now, and at all times have been, willing and desirous of complying with any laws applicable to it. On the other hand, our client should not be requested to comply with laws which are not applicable to it.

"Would you be good enough to furnish us with any citation of authority upon which the Wage and Hour Division might rely which would support the conclusion that our client, a wholesaler who sells no goods outside of the state, is subject to the Wage and Hour Law? If and when such citation is made available to us, we would be pleased to again review the subject and advise you accordingly."

The answer of respondent asserts that no citation of authority was furnished by the Wage and Hour Administrator, "and respondent verily believes that said Administrator is unable so to do because there is no such authority."

Appellant prayed that the District Court enter an order dismissing the application of the Administrator of the Wage and Hour Division and denying the relief sought therein.

The averment of appellee, on information and belief, that appellant was engaged in interstate commerce was not subsequently supported by the introduction of any evidence. Appellant's answer, specifically denying engagement in interstate commerce by appellant and its employees, described the conduct of its business as exclusively intrastate commerce. A fact question upon the jurisdictional issue of interstate commerce was thus tendered by the pleadings in the district court. ......

But the court declined to try this issue. Reciting that "upon consideration of the application of the petitioner, the answer of the respondent thereto, and after hearing argument of counsel on behalf of the parties and on all of the proceedings herein and it appearing that the jurisdiction of the court is established by the petitioner's application and respondent's answer and it further appearing to the court that *the issuance of this order does not require a determination as to whether or not respondent is within the coverage of the Fair Labor Standards Act which finding is not made"* (italics ours), the district court entered an order directing appellant to appear before the Administrator at a definite time and place and, then and there, to produce the demanded books and records. Appellant obtained a stay of the district court order, pending appeal.

In his brief, the appellee-administrator broadly asserts that "the whole purpose of the administrative investigation and the subpoena in question here is to secure information to enable him to determine, in the first instance, whether the Act is applicable and, if so, whether appellant has violated the Act," and that "the question whether appellant is within the purview of the substantive provisions of the Act is not properly before the court in this summary proceedings to enforce the subpoena."

The rejoinder is made by appellant that the Fair Labor Standards Act applies in express terms only to employers and employees who are "engaged in commerce or in the production of goods for commerce;" 29 U.S.C.A. § 202(a) ; that an employer not subject to the Act is not required to submit to the investigation and inspection by the Administrator of his books and records; and that where essential jurisdictional allegations of fact are controverted, the district court lacks power to assume jurisdiction, without hearing proof and determining the questions of fact upon which jurisdiction must rest.

That Congress was exercising its constitutional power to regulate commerce among the several states, in the enactment of the Fair Labor Standards Act of 1938, was recited in the declaration of policy in Section 2(b) of the Act. Section 3(b) of the Act defined commerce as meaning "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." Section 6 of the Act provides that "every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce" prescribed minimum wages; and Section 7 provides that "no employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce" for a longer workweek than provided therein. Section 8 applies to "each industry engaged in commerce or in the production of goods for commerce."

Section 9 makes the provisions of the Federal Trade Commission Act, 38 Stat. 717–722, U.S.C.A., Title 15, §§ 41–49, relating to the attendance of witnesses and the production of books, papers and documents, applicable to the jurisdiction, powers and duties of the Administrator of the Wage and Hour Division of the Department of Labor, for the purpose of any hearing or investigation provided for in the Fair Labor Standards Act. The provisions of the Federal Trade Commission Act thus incorporated in the Fair Labor Standards Act supply the aid of any court of the United States to the Administrator in procuring the attendance and testimony of witnesses, and the production of documentary evidence, by conferring jurisdiction upon the district courts to issue an order requiring the appearance of witnesses and the production of evidence before the administrator, where his subpoena has been disobeyed.

Section 10 of the Fair Labor Standards Act prescribes review in the Circuit Courts of Appeal of wage orders against any aggrieved person, but the review is expressly "limited to questions of law, and findings of fact by the Administrator when supported by substantial evidence shall be conclusive."

Upon the foregoing analysis, it is obvious that Congress had well in mind the applicability of the Act only to interstate commerce engagements.

The controversial provision of the Act is Section 11, which pertains to investigations, inspections, and records. The important excerpts of this Section are:

11(a). "The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any *industry subject to this Act* [sections 201–219 of this title], and may

enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act [sections 201–219 of this title], or which may aid in the enforcement of the provisions of this Act [sections 201–219 of this title]." (Italics ours.) 11(c). *"Every employer subject to any provision of this* Act [sections 201–219 of this title] or of any order issued under this Act [sections 201–219 of this title] shall make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act [sections 201–219 of this title] or the regulations or orders thereunder." (Italics ours.)

The Administrator contends that, while in the first clause of the compound sentence of Section 11(a) above quoted, the words "industry subject to this Act [sections 201–219 of this title]" are used, there is no such limitation in the second clause of the sentence, and that, therefore, the Administrator has been accorded visitorial and inquisitorial power over all industry, to determine whether any person has violated any provision of the Act, or for the purpose of aiding the enforcement of the provisions of the Act.

To adopt this strained construction would extend the sweep of his inquisitorial power beyond the apparent intention of Congress, as evidenced by the repeated limitations of the applicability of the Act to those subject to its provisions. An administrator must restrain himself within the bounds of his delegated authority. It is unreasonable to assume that Congress intended that one who, when called upon to produce his books and records, denies that he is engaged in transactions within the purview of the Act should be refused a hearing upon that issue before his privacy is invaded in derogation of his individual immunity from unreasonable search of his papers and effects.

■ In the exercise of the judicial power to review questions of law, as conferred by an Act of Congress, the seal of a United States Court should not become a mere rubber stamp for the approval of arbitrary action by an administrative agency. Why, in the context, should any power of review whatever have been vested in the courts, unless Congress intended that such review should be judicially exercised?

In Interstate Commerce Commission v. Brimson, 154 U.S. 447, 485, 14 S.Ct. 1125, 38 L.Ed. 1047, Mr. Justice Harlan said: "The inquiry whether a witness before the commission is bound to answer a particular question propounded to him, or to produce books, papers, etc., in his possession and called for by that body, is one that cannot be committed to a subordinate administrative or executive tribunal for final determination." Moreover, the opinion asserts that the regulatory power of Congress over interstate commerce carries no power to destroy or impair fundamental guarantees of personal rights recognized by the Constitution as inhering in the freedom of the citizen. It was held that a citizen, in a proceeding brought in a Circuit Court of the United States by the Interstate Commerce Commission to compel him to answer particular questions and to produce particular books in his possession, was free to contend before that court that "he was not legally bound to produce the books, papers, etc., ordered to be produced; or that neither the questions propounded nor the books, papers, etc., called for relate to the particular matter under investigation, *nor to any matter which the Commission is entitled under the Constitution or laws to investigate."* (154 U.S. 479, 14 S.Ct. 1136, 38 L.Ed. 1047.) The Fair Labor Standards Act confers no authority upon its administrator to regulate or investigate *intrastate commerce.*

With characteristic forcefulness of expression, Mr. Justice Holmes said, in Federal Trade Commission v. American Tobacco Company, 264 U.S. 298, 305, 306, 307, 44 S. Ct. 336, 337, 68 L.Ed. 696, 32 A.L.R. 786: "Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (Interstate Commerce Commission v. Brimson, 154 U.S. 447, 479, 14 S.Ct. 1125, 38 L.Ed. 1047), and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. We do not discuss the question whether it could do so if it tried, as nothing short of

the most explicit language would induce us to attribute to Congress that intent. The interruption of business, the possible revelation of trade secrets, and the expense that compliance with the Commission's wholesale demand would cause are the least considerations. It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up. * * * The investigations and complaints seem to have been only on hearsay or suspicion—but even if they were induced by substantial evidence under oath, the rudimentary principles of justice that we have laid down would apply. We cannot attribute to Congress an intent to defy the Fourth Amendment or even to come so near to doing so as to raise a serious question of constitutional law." The Fair Labor Standards Act incorporates the provisions of Section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49, which was before the Supreme Court for interpretation in the American Tobacco Company case, supra.

In Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 49, 58 S.Ct. 459, 82 L.Ed. 638, Mr. Justice Brandeis commented that the National Labor Relations Board is without power to enforce obedience to its subpoena to testify, or to produce written evidence; and that to enforce such obedience, it must apply to a district court where appropriate defense to its application may be made. Cf. Jones v. Securities and Exchange Commission, 298 U.S. 1, 26, 56 S.Ct. 654, 80 L.Ed. 1015; Sinclair v. United States, 279 U.S. 263, 292, 49 S.Ct. 268, 73 L.Ed. 692; Federal Trade Commission v. Claire Furnace Co., 274 U.S. 160, 170, 47 S.Ct. 553, 71 L.Ed. 978; Federal Trade Commission v. Millers' Federation, 60 App. D.C. 66, 47 F.2d 428, 429.

Appellee stresses as authority for his position the decision of the Seventh Circuit Court of Appeals in Fleming, Adm'r, Wage and Hour Division, Dept. of Labor, v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, 386. It should be observed that in the second paragraph of the opinion, the court stated that "respondent's operation of its Kansas City plant brings it within the terms of the Fair Labor Standards Act as an employer of employees engaged in interstate commerce or in the production of goods for interstate commerce." Therefore, the situation being differentiable, the authority has no real bearing here.

In National Labor Relations Board v. Barrett Co., 7 Cir., 120 F.2d 583, a differently constituted court of the same Circuit Court of Appeals, while conceding that in actual practice it is the duty of the Labor Board first to inquire into an employer's business and determine (tentatively at least) whether that business is interstate, held that the Board may, if the employer refuses to furnish information as to the interstate character of his business (which was not the case here), secure the information through the issuance of a subpoena even before a formal complaint against the employer has been issued and served. Judge Major, however, dissented and cited Federal Trade Commission v. American Tobacco Company, supra, and Interstate Commerce Commission v. Brimson, supra, the principles of which we have attempted, likewise, to apply.

In a recent case cited by appellee, Cudahy Packing Co. v. Fleming, 8 Cir., 122 F.2d 1005, where the employer was admittedly engaged in interstate commerce at one of its two plants in Minnesota, it was held that the Administrator of the Wage and Hour Division had the right to inspect the shipment records of both plants in order to determine the scope of the operations of each and the relationship between them. The court said: "Where an industry is subject to the Fair Labor Standards Act, the Administrator is entitled, under § 11(a) of the Act, to inspect the records of all its employees, both non-exempt and exempt." (122 F.2d 1009) Obviously, the authority is not in point against the insistence of an employer that he is not subject to the Act.

Appellee points to our own decision in Goodyear Tire & Rubber Co. v. National Labor Relations Board, 6 Cir., 122 F.2d 450, 136 A.L.R. 883. We there expressly applied the principles of Interstate Commerce Commission v. Brimson, supra, and Federal Trade Commission v. American Tobacco Co., supra, concluded that judicial discretion had been exceeded in the ordering of a subpoena duces tecum, and remanded the cause to the district court for reconsideration on evidence of the demand upon the employer for a card index of all active and inactive employees showing names, departments and clock-card numbers. Our course in that case is consistent with that which we find necessary here.

The appellee leans heavily upon two decisions of the Fifth Circuit Court of

Appeals, Cudahy Packing Co. of Louisiana v. Fleming, 119 F.2d 209, and President of United States v. Skeen, 118 F.2d 58, 59. The Cudahy case sheds little light, inasmuch as from the short per curiam opinion it does not appear whether the Cudahy Packing Company was engaged in interstate commerce. The Skeen case arose under the provisions of the Connally Act, 15 U.S.C.A. § 715 et seq., the purpose of which was "to aid the states in enforcing laws limiting the amount of oil to be produced from wells and designated fields, by prohibiting shipment of excess oil produced, known as 'hot' oil, in interstate commerce." It was held that the Federal Tender Board would not be bound by the denial of any person operating on a particular field that he was engaged in interstate commerce, but that the Board had the right to inspect the records of a producer "operating in the field" to ascertain whether or not the Connally Act was violated. Judge Foster remarked that "it might well be that a person not engaged in interstate commerce would furnish oil to a third person, which was used by him in violating the law," and reasoned that "if the board could not require reports and investigate the conduct of every person operating in the field under its jurisdiction, regardless of whether he was engaged in interstate commerce, its enforcement of the law would be greatly hampered." Concededly, the parties against whom mandatory injunctions were sought were *operating within the field of the board's jurisdiction,* while in the case at bar the unlmited power of investigation claimed by the administrator, if unchecked by the challenge of lack of jurisdiction, would extend beyond the field of his power of action conferred by the Act of Congress.

■ Section 11(c) of the Fair Labor Standards Act, quoted supra, which requires the keeping of records of employment and the making of reports to the Administrator, applies in express terms only to "every employer subject to any provision of this Act [sections 201–219 of this title]." Such employer, tu be subject to the coverage of the Act, must be engaged in interstate commerce or in the production of goods for interstate commerce. Jewel Tea Co. v. Williams, 10 Cir., 118 F.2d 202. From the description of the conduct of its business detailed in its answer, the appellant was, in no particular, engaged in interstate commerce or in the production of goods for interstate commerce. Goods shipped to appellant from without the state of Michigan were alleged to have been shipped directly to appellant's warehouse, to have come to rest there, and to have been commingled with other goods of appellant, before being resold to its local customers or shipped to some other place *in Michigan.*

As was said in Schechter Poultry Corporation v. United States, 295 U.S. 495, 543, 55 S.Ct. 837, 849, 79 L.Ed. 1570, 97 A.L.R. 947: "The mere fact that there may be a constant flow of commodities into a state does not mean that the flow continues after the property has arrived and has become commingled with the mass of property within the state and is there held solely for local disposition and use. So far as the poultry here in question is concerned, the flow in interstate commerce had ceased." See, also, Jewel Tea Co. v. Williams, supra, 118 F.2d at page 207; Lipson v. Socony Vacuum Corp., 1 Cir., 87 F.2d 265; Winslow v. Federal Trade Commission, 4 Cir., 277 F. 206; Ward Baking Co. v. Federal Trade Commission, 9 Cir., 264 F. 330.

We find in United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, no support for the insistence of appellee, for the reason that the answer to the question presented here was not suggested there. Nor do we find the position of appellee sustained by cases cited in which the rule was recognized that Congress may, in the regulation of interstate commerce, require records and reports which embrace *intrastate* as well as *interstate* business where a person is engaged in both. Interstate Commerce Commission v. Goodrich Transit Co., 224 U.S. 194, 32 S. Ct. 436, 56 L.Ed. 729; Newfield v. Ryan, 5 Cir., 91 F.2d 700; Ryan v. Amazon Petroleum Corporation, 5 Cir., 71 F.2d 1. The issue raised by appellant in the instant case is that appellant and its employees were not engaged in *interstate commerce* at all.

There would seem to be no point in extending this opinion to discussion of numerous district court decisions (some reported, some not) which have been urged upon us. We shall be content to cite a few district court opinions which, in varying contexts, have been found helpful to our study of the problem presented. Federal Trade Commission v. Baltimore Grain Co., D.C., 284 F. 886; Gates v. Graham Ice Cream Co., D.C., 31 F.Supp. 854; Perkins, Sec'y of Labor, v. Endicott Johnson Cor-

poration, D.C., 37 F.Supp. 604; Federal Trade Commission v. Smith, D.C., 34 F.2d 323; Securities and Exchange Commission v. Tung Corporation of America, D.C., 32 F.Supp. 371.

On the issue of fact tendered by appellant's answer, the administrator must show that appellant is engaged in interstate commerce or in the production of goods for interstate commerce before he will be entitled to the relief prayed in his application. On the hearing of this issue, both appellant and appellee will be privileged to introduce evidence.

The order of the district court is reversed and the cause is remanded for further proceedings in conformity with this opinion.