**WALLING, Adm'r of Wage and Hour Division, Dept. of Labor, v. DAILY PRESS, Inc.**

Civil Action No. 37.

District Court, E. D. Virginia.

Dec. 26, 1944.

Douglas B. Maggs, Sol. of Labor, and Archibald Cox, Associate Sol. of Labor, both of Washington, D. C., and Lemuel H. Davis, Acting Regional Atty., and James B. Leist, Jr., both of Richmond, Va., for the petitioner, United States Department of Labor.

Charles E. Ford, of Newport News, Va. (Elisha Hanson, of Washington, D. C., of counsel), for respondent Daily Press, Inc.

HUTCHESON, District Judge.

This is a proceeding brought by the Administrator of the Wage and Hour Division, Department of Labor, for an order directing The Daily Press, Incorporated, of Newport News, Virginia, to show cause why an order should not be issued requiring it to produce certain documents pursuant to a subpoena duces tecum issued by the Administrator under the Fair Labor Standards Act. The petitioner will be referred to as the Administrator and The Daily Press, Incorporated, as the respondent.

In his petition the Administrator alleges: That upon information and belief the respondent is engaged in the production of goods for commerce; that respondent is engaged in interstate commerce within the meaning of the Act; and that reasonable grounds exist for believing respondent was violating Sections 7, 11(c), and 15(a) (1), (2) and (5) of the Act, 29 U.S.C.A. §§ 207, 211(c), 215(a) (1, 2, 5). The subpoena duces tecum directed the production of certain books, records, etc., pertaining to certain business affairs of the respondent in the conduct of its business as a newspaper publisher to be considered in an investigation conducted by the Administrator under the provisions of 11(a) of the Act.

The respondent filed a return and answer, raising numerous objections to the proceeding and praying that the order be vacated.

The contention upon which the respondent relies is that it is not an industry subject to the Act and before the subpoena may be enforced the District Court should determine whether or not respondent is covered by the Act.

Section 11(a) of the Act is as follows:

"The Administrator or his designated representatives may investigate and gather

data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this Act, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act, or which may aid in the enforcement of the provisions of this Act."

In support of its contention, respondent places chief reliance in General Tobacco & Grocery Company v. Fleming, 6 Cir., 125 F.2d 596, 599, 140 A.L.R. 783, wherein the Court interpreted Section 11(a) of the Act as meaning the question of coverage of the employer must be ascertained before the allowance of the order, saying:

"It is unreasonable to assume that Congress intended that one who, when called upon to produce his books and records, denies that he is engaged in transactions within the purview of the Act should be refused a hearing upon that issue before his privacy is invaded * * *."

The opinion of the learned Judge is not in harmony with the weight of authority distinguishing the term "industry" from the term "employer," as used in the Act. The reasoning in the cases relied upon by the Administrator appears more nearly consonant with the views expressed in Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424. The latter case mentions the former without expressly overruling it and may be distinguishable for the reason it dealt with the Walsh-Healey Public Contracts Act, in which the contractor entered into a stipulation concerning minimum wages. It is, however, closely analogous and the reasoning of the Court is highly persuasive in arriving at a determination of the instant case.

In the Endicott Johnson case the Secretary of Labor was authorized under the Act to make investigations, to issue orders requiring the attendance and testimony of witnesses in the production of evidence and it was provided that in case of contumacy, failure or refusal of any person to obey the orders of the Secretary the District Courts of the United States should have jurisdiction to issue an order requiring the production of such evidence. In the opinion of the Court at page 508, of 317 U.S.,

at page 343 of 63 S.Ct., 87 L.Ed. 424, it is said:

"The Secretary is given no power to investigate mere coverage, as such, or to make findings thereon except as incident to trial of the issue of violation. No doubt she would have discretion to take up the issues of coverage for separate and earlier trial if she saw fit. Or, in a case such as the one revealed by the pleadings in this one, she might find it advisable to begin by examining the payroll, for if there were no underpayments found, the issue of coverage would be academic. On the admitted facts of the case the District Court had no authority to control her procedure or to condition enforcement of her subpoenas upon her first reaching and announcing a decision on some of the issues in her administrative proceeding."

In Mississippi Road Supply Company v. Walling, 5 Cir., 136 F.2d 391, 394, in a preliminary hearing on affidavits, it was made to appear that some of the employees were probably engaged in commerce and that there was reason to question whether the company was exempt under the Act. In allowing the subpoena the Court exercised "a discretion to abstain from a present final enquiry into these matters, and to assist a full enquiry by the Administrator."

At page 393 of 136 F.2d the Court said:

"The power of the Administrator to hold an enquiry rests upon Section 11(a), but extends only to 'employment in any industry subject to the Act'. Now 'industry' is defined in Section 3(h) very broadly, and certainly includes the business of buying and selling in which this Company is engaged. The general industry is therefore subject to the Act, and we presume has its 'Industry Committee' under Section 5. Whether a particular employer or employee is subject to the Act is another question, and is frequently a main subject of legitimate investigation. It is a necessary part of any enquiry as to whether there are violations of the Act. Since an affirmative answer is the foundation of any further action, it may be logical to determine this question first, but it must be remembered that the Investigators do not determine it, they but gather information. Convenience in most cases dictates that both 'coverage' and 'violations' be enquired about in a single investigation. It has just been decided, and we accordingly hold that in such investigations the

investigating authority has generally the right to look first into either question, or into both concurrently." (Citing cases)

In Standard Dredging Corporation, D.C., 44 F.Supp. 601, 602, affirmed 132 F.2d 322, the District Judge pointed out that the word "industry" as employed in Section 11(a) of the Act, "evidently does not include the term 'employer' which is separately defined in section 3(d). Industry, as defined in the Act, is the concept utilized in the organization of industry-committees under section 5; it is wider and more inclusive than the term employer."

In Walling v. Benson, 8 Cir., 137 F.2d 501, the Court granted the subpoena and stated that a reasonable ground must exist for believing the industry is subject to the Act and that the determination of this question in an individual case must necessarily and fundamentally be left to the sound discretion and judgment of the District Court. The Court pointed out that the issue of actual coverage is not involved but only a showing of reasonable ground to believe it existed. See also Martin Typewriter Company v. Walling, 1 Cir., 135 F.2d 918, and Cudahy Packing Company v. Fleming, 5 Cir., 119 F.2d 209.

In Cudahy Packing Company v. Fleming, 8 Cir., 122 F.2d 1005, 1009, the case involved two plants of the defendant, coverage being admitted in one and denied in the other. With respect to the latter plant, the company claimed the Administrator could not lawfully compel production of the records of the employees. The Court said:

"Where an industry is subject to the Fair Labor Standards Act, the Administrator is entitled, under § 11(a) of the Act [29 U.S.C.A. § 211(a)], to inspect the records of all its employees, both non-exempt and exempt."

Although the Court did not specifically define the meaning of the word "industry", from a reading of the opinion it would appear that it meant industry in its broader scope as distinguished from a particular employer. At page 1008 of 122 F.2d the Court said:

"Where there has been a clear grant of an administrative power,—as there is here of the general right to issue implementing subpoenas—in a field of declared public interest, and the statute is subject to two reasonable constructions as to the manner in which the power may be exer-

cised, one of which will facilitate performance of the prescribed administrative duties, and the other of which will impede it, the courts should adopt the facilitating construction, if no fundamental rights are thereby violated or impaired."

█ It is my opinion that the word "industry," as used in Section 11(a) of, the Act, means the *general industry* as distinguished from a particular employer. In his petition the Administrator alleges he has reasonable ground to believe the respondent is covered by the Act and has violated its terms. Accordingly, it would appear proper to assume that the newspaper industry is subject to the Act in accordance with the provisions of Section 5, 29 U.S.C.A. § 205. Mississippi Road Supply Company v. Walling, supra. To enable the Administrator, acting in the public interest, to determine these facts can not of itself constitute a violation of the Fourth Amendment when the Administrator acts under reasonable conditions. Walling v. Benson supra, and Cudahy Packing Company v. Fleming, 8 Cir., 122 F.2d 1005.

█ Classification of an industry by the Administrator as being subject to the Act is a constitutional delegation of legislative powers. See Opp Cotton Mills v. Administrator, 312 U.S. 126 at pages 142-145, 657, 61 S.Ct. 524, 85 L.Ed. 624.

The words "industry" and "employer" are used differently in the Act and are given different definitions in Section 3, 29 U.S.C.A. § 203. For example, Sections 6, 7 and 8 of the Act, 29 U.S.C.A. §§ 206–208, referring to minimum wages and maximum hours, pertain to *employers* and not *industries*. Section 11(a), providing for investigations and inspections, significantly uses the language "any industry subject to this Act" and invests the Administrator with authority to enter and inspect such places and such records as he may deem necessary and appropriate.

██ Whether a particular *employer* is subject to the Act presents a different question from whether or not a particular *industry* is subject thereto. Whether there are violations of the Act is a necessary part of any inquiry, Mississippi Road Supply Company v. Walling supra, and if no violations are found the issue of coverage becomes academic. Endicott Johnson Corporation v. Perkins, supra. The question of coverage of a particular employer may

be the subject of a judicial determination in appropriate proceedings instituted under the Act. Sections 16 and 17 of the Act, 29 U.S.C.A. §§ 216, 217. Since the Administrator may find that a general industry, such as the newspaper industry, is subject to the Act, it would follow that he may investigate an employer whose business is embraced within such general industry. Opp Cotton Mills v. Administrator, supra.

In conclusion, it is the opinion of the Court when the Administrator shows: reasonable ground to believe the respondent is covered by the Act; the records required by the subpoena are relevant to the legitimate field of inquiry under the Act; and the requirements of the Administrator are not unreasonable; and there being no showing on the part of the respondent of any special grounds for the denial of the order requiring the production of the records called for by the subpoena duces tecum, such order should be granted.

An order granting the prayer of the petitioner will be entered.