WALLING, Adm'r, Wage and Hour Division, U. S. Dept. of Labor, v. NEWS PRINT-ING CO., Inc.

No. 8443.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 22, 1943.

Decided March 5, 1945.

Writ of Certiorari Granted May 21, 1945.

See 65 S.Ct. 1200.

Bessie Margolin, of Washington, D. C. (Douglas B. Maggs, Sol., of Washington, D. C., John K. Carroll, Regional Atty., of New York City, and Morton Liftin and Joseph I. Nachman, Attys., both of Washington, D. C., United States Department of Labor, on the brief), for appellant.

Elisha Hanson, of Washington, D. C., and David L. Cole, of Paterson, N. J. (Cole & Morrill, of Paterson, N. J., on the brief), for respondent.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The Administrator of the Wage and Hour Division, United States Department of Labor, petitioned the court below to enforce a subpoéna duces tecum pursuant to the provisions of Section 9 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 209, to compel the respondent, News Printing Company, Inc., to produce the books, records and documents described in the subpoena before the Administrator or his representatives at Newark, New Jersey. The records sought to be examined relate to the wages paid to the respondent's employees, the hours of work, and the sale or transportation of newspapers, books, periodicals or goods shipped by the respondent in interstate commerce. The respondent would not permit an examination of its

records by agents of the Administrator and refused to obey the subpœna. Consequently the Administrator filed a petition to the court below seeking an order directing the respondent to produce the records covered by the subpœna at such time and place as the court should direct. The petition alleged upon information and belief that respondent was engaged in interstate commerce within the meaning of the Act and was violating Sections 6, 7, 11(c), and 15 (a) (1) (2) (5) of the Act, 29 U.S.C.A. §§ 206, 207, 211(c), and 215(a) (1), (2, 5).

A rule to show cause was issued and the respondent filed a return and answer asserting that it was not within the purview of the Act, that to require it to produce the records specified in the subpœna would constitute a violation of the rights guaranteed to it by the First, Fourth and Fifth Amendments to the Constitution of the United States. The respondent's answer asserted also that it was exempted by the provisions of Section 13(a) (1), 29 U.S.C.A. § 213(a) (1), because it was engaged in "a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman * * *." An affidavit, executed by the president of the respondent, alleged that it was engaged in printing and publishing in Paterson, New Jersey, a daily newspaper called the "Paterson Evening News" with a circulation of more than three thousand copies and that less than 1% of its papers moved in interstate commerce. Other affidavits filed by the respondent, executed by persons who are experts in the newspaper field, state their conclusions as to what will be the effect of the Act on the newspapers of the United States including that of the respondent. They assert that executing the provisions of the Act will destroy the freedom of the press.

The learned District Judge held that the objections to the subpœna· based on the Fifth Amendment were without merit. He held also that other objections made by the respondent based on the Fourth Amendment turned on the question of the coverage of the respondent by the Act. The court thereupon discharged the rule, stating that since the Administrator had not had the opportunity "sufficiently to argue the question of coverage", the matter was left open for further proceedings. See 49 F.Supp. 659, 661.

■ The Administrator has appealed.

The appeal was taken in accordance with the procedure established by the Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, and also in accordance with the former appellate practice. The appellant has stated that it would be helpful if we would designate which manner of taking the appeal was correct. We think that·it was the intent of the framers of Rule 81 to provide that the new and improved appellate procedure should apply insofar as appropriate to proceedings such as that sub judice. For an analogy based upon the Criminal Appeals Rules see note 2 to the opinion in United States v. White, 322 U.S. 694, 697, 64 S.Ct. 1248. Cf. McCrone v. United States, 307 U.S. 61, 65, 59 S.Ct. 685, 83 L.Ed. 1108. Cf. also Perkins v. Endicott Johnson Corporation, 2 Cir., 128 F.2d 208, 226, 227. There is no question, however, in the case at bar as to whether the appeal was taken properly.

■ The Administrator contends that the Act requires the enforcement of the subpœna without a determination by the court that the employer is within the coverage of the Act. The respondent takes the position that in the absence of proof by the Administrator and a determination by the court that the respondent's business is within the purview of the Act, the execution of the subpœna would be unlawful; that the investigation in any event is unlawful because it is in violation of the rights guaranteed to the respondent by the constitutional amendments herein before referred to and also falls outside the power conferred upon Congress by the Commerce Clause, Art. 1, § 8, cl. 3. The respondent treats the proposed investigation as if it were an attempt at regulation and presents in respect to the issue of inspection every constitutional objection which it might assert to regulation under the Act. But an inspection of the records of a corporation is not regulation of the corporation even if information gathered by means of the investigation be employed subsequently as a basis for attempted regulation. Many of the arguments addressed to this court by the respondent would be addressed appropriately to the issue of whether the respondent was subject to the regulatory or penalty provisions of the Act. The court below, however, was concerned only with the question of inspection by the Administrator of the books and records specified in the subpœna.[1]

---

[1] Section 11 (a) of the Act, 29 U.S.C.A. § 211 (a), provides in part, "The Administrator or his designated representatives may investigate and gather

The problem of the execution of a subpœna without proof of coverage by the Act of the corporation on which it is served is not one of original impression except insofar as the question may be affected by the fact that the respondent is engaged in publishing a newspaper. The question has been adjudicated by the Circuit Courts of Appeals for the First, Second, Fifth, Sixth, Seventh, and Eighth Circuits.[2] With the exception of the Circuit Court of Appeals for the Sixth Circuit and possibly the Circuit Court of Appeals for the Eighth Circuit these tribunals have held that the Administrator might issue a subpœna without proving that the respondent was within the coverage of the Act. In General Tobacco & Grocery Co. v. Fleming, 6 Cir., 125 F.2d 596, 140 A.L.R. 783, the Circuit Court of Appeals for the Sixth Circuit passed on the question of the Tobacco Company's coverage by the Act but concluded that it was not engaged in interstate commerce.

The court thereupon reversed the order of the District Court executing the subpœna.

An analogous question was before the Supreme Court in Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 340, 87 L.Ed. 424. In the cited case Mr. Justice Jackson stated that certiorari was granted "because of probable conflict with a holding of the Circuit Court of Appeals for the Sixth Circuit" in General Tobacco & Grocery Co. v. Fleming, supra. The Supreme Court, therefore, took cognizance of the Fair Labor Standards Act in the Endicott Johnson decision though that Act was not before it. The Act which was before the Supreme Court was the Walsh-Healey Public Contracts Act, 49 Stat. 2036, 41 U.S.C.A. § 35–45, and the specific question adjudicated was the right of the Secretary of Labor to issue a subpœna to compel the production of employment records she having reason to believe that the Walsh-Healey Act had been violated by the

---

data regarding the wages, hours, * * * and practices of employment in any industry subject to this Act, and may enter and inspect such places and such records * * *, question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act, or which may aid in the enforcement of the provisions of this Act." Section 9 provides that for the purpose of any hearing or investigation provided for in the Act the provisions of Sections 9 and 10 of the Federal Trade Commission Act of September 26, 1914 as amended 15 U.S.C.A. §§ 49 and 50, are made applicable to the jurisdiction, powers, and duties of the Administrator. Section 9 of the Federal Trade Commission Act provides that the Commission, or its agents, " * * * shall at all reasonable times have access to, for the purpose of examination * * * any documentary evidence of any corporation being investigated or proceeded against * * * " and that the Commission shall have the power to require by subpoena " * * * the production of all such documentary evidence relating to any matter under investigation." A later clause provides that the District Courts of the United States on refusal of the corporation being investigated to obey a subpoena issued by the Commission "may * * * issue an order requiring such corporation * * * to produce documentary evidence if so ordered * * *."

[2] Martin Typewriter Co. v. Walling, 1 Cir., 135 F.2d 918; Walling v. Standard Dredging Corporation, 2 Cir., 132 F.2d 322, certiorari denied 319 U.S. 761, 63 S.Ct. 1318, 87 L.Ed. 1712; Walling v. American Rolbal Corporation, 2 Cir., 135 F.2d 1003; Cudahy Packing Co. v. Fleming, 5 Cir., 119 F.2d 209, reversed on other grounds, 315 U.S. 357, 62 S. Ct. 651, 86 L.Ed. 895; Mississippi Road Supply Co. v. Walling, 5 Cir., 136 F.2d 391, certiorari denied 320 U.S. 752, 64 S.Ct. 57; General Tobacco & Grocery Co. v. Fleming, 6 Cir., 125 F.2d 596, 140 A.L.R. 783; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446; Cudahy Packing Co. v. Fleming, 8 Cir., 122 F.2d 1005, reversed on other grounds, sub nom Cudahy Packing Co. v. Holland, 315 U.S. 785, 62 S.Ct. 803, 86 L.Ed. 1191. Cf. Walling v. Benson, 8 Cir., 137 F.2d 501, 503, 504, certiorari denied 320 U.S. 791, 64 S.Ct. 206. In the Cudahy Packing Co. case last cited, the District Court enforced the subpoena without a showing that there were reasonable grounds for believing that the Act was being violated. In Walling v. Benson the court held that the Administrator was "only required to satisfy the court of the existence of reasonable ground for making the investigation, i. e. reasonable ground to believe that the industry is subject to the Act, and not to make proof of actual coverage under the Act, nor is the employer entitled to a trial and adjudication of the question of coverage on such an application."

corporation. The Fair Labor Standards Act is applicable to raise labor standards generally while the Walsh-Healey Act was intended to improve labor standards in plants of corporations contracting with the government. A corporation by making a contract with the United States may voluntarily submit itself to the provisions of the Walsh-Healey Act but this seems immaterial in employing the analogy of the Endicott Johnson decision to the facts of the case at bar. It should be noted especially that the duties of the Secretary of Labor under the Walsh-Healey Act and those of the Administrator of the Fair Labor Standards Act are similarly administrative. In the Endicott Johnson decision the Supreme Court held that the District Court in declining to execute the subpœna had itself decided the question of coverage by the Act, a function which lay primarily within the field of the Secretary of Labor. Mr. Justice Jackson stated, 317 U.S. at page 509, 63 S.Ct. at page 343, 87 L.Ed. 424, "Congress sought to have the procurement officers advised by the experience and discretion of the Secretary rather than of the District Court. To perform her function she must draw inferences and make findings from the same conflicting materials that the District Court considered in anticipating and foreclosing her conclusions." Accordingly, the Supreme Court held that the District Court lacked authority to hear and determine the question of coverage and that it was the court's duty to order the enforcement of the subpœna upon the showing made by the Secretary of Labor. We consider the decision in the cited case as persuasive in determining the issues presented by the case at bar.

In the instant case the showing made by the Administrator is sufficient. Little doubt may be entertained that the respondent's business is within the definition of "Industry" set out in Section 3(h) of the Act, 29 U.S.C.A. § 203(h); that its employees, or at least some of them, are employed within the meaning of Section 3 (g). These definitions are very broad. From the affidavits filed by the respondent it appears that some [3] of the newspapers published by the respondent move in interstate commerce and that the respondent apparently is not within the purview of any exemptions specified in Section 13. Moreover, the Administrator, as we have pointed out, alleged upon information and belief that the respondent was engaged in interstate commerce within the meaning of the Act and that he had reasonable grounds for believing that the respondent repeatedly had violated the Act. The showing made by the Administrator in the case at bar is sufficient. To require the Administrator to make proof of coverage would be to turn the proceeding into a suit to decide a question which must be determined by the Administrator in the course of his investigation. See Martin Typewriter Co. v. Walling, 1 Cir., 135 F.2d 918, 919. The learned District Judge in the case at bar did not treat the Administrator's application for the execution of the subpœna as a part of a procedure instituted by the officer charged with the administration of the Act. He treated the Administrator's application as if it were a proceeding to impose the strict legal sanctions of Section 16 of the Act, 29 U.S.C.A. § 216, upon the respondent. This was erroneous. If the instant proceeding was one to subject the respondent to the penalties imposed by Section 16, proof of coverage would be required.

All of the authorities discussed or cited in this opinion deal with business corporations none of which was engaged in publishing a newspaper. As we have stated the respondent contends that because its principal business is publishing a newspaper the provisions of the First, Fourth and Fifth Amendments invalidate, insofar as it is concerned, the provisions of Section 11 of the Act, applicable to ordinary business corporations. The substance of the respondent's argument is that such an investigation as that proposed by the Administrator would violate the guarantee of freedom of the press.

We think it is unnecessary to embark upon an extended discussion of this or similar contentions of the defendant. We are unable to perceive how the production of the records specified in the subpœna would

---

[3] In the case at bar it appears that less than 1% of the newspapers published by the respondent move across state lines, but the fact that the amount of the product moving in interstate commerce is small will not of itself defeat the power of Congress under the Commerce Clause. See United States v. Darby, 312 U.S. 100, 123, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, and Santa Cruz Packing Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954.

in any wise impede the respondent in publishing its newspaper or limit it in disseminating news. Requiring the respondent to produce the records under the subpœna will not constitute an unreasonable seizure or deprive the respondent of its property without due process of law. The respondent has made no showing that the production of its records would oppress it in any way. Production of the respondent's employment and shipping records is too far removed from possible infringement of the respondent's constitutional rights to render its objections presently pertinent.

■ The execution of the subpœna in the case at bar depends upon Section 9 of the Federal Trade Commission Act. See note 1, supra. Section 9 states that the district court may require the production of documentary evidence. The execution of a subpœna such as that in the case at bar rests in the legal discretion of the district courts. That discretion must be exercised in favor of the Administrator in the case at bar.

The judgment of the court below is reversed.

McLAUGHLIN, Circuit Judge (dissenting).

I dissent. I think that the Fair Labor Standards Act imposes on the district court, at the very least, the duty of satisfying itself that the Administrator has reasonable ground for believing that petitioner's business is subject to the Act. No such showing was made, or even attempted, in the instant case. The Administrator merely asserted, upon information and belief, that the petitioner is engaged in the business of publishing a newspaper and in connection with such publication is engaged in production of goods for interstate commerce within the meaning of the Act; and further, also upon information and belief, that he had reasonable grounds for believing that petitioner had repeatedly violated the Act. The petitioner in its return and answer specifically denied that the Act is applicable to its business.

Section Nine of the Federal Trade Commission Act, which is incorporated into the Fair Labor Standards Act, expressly gives the district court discretion in the issuance of such subpœna as sought. It calls for the exercise of the independent judgment of the district court. It does not contemplate blind approval of unsubstantiated administrative action where juris-

diction is completely denied. There is nothing to be inferred to the contrary from Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 342, 87 L.Ed. 424. With regard to the Walsh-Healey Act there under consideration, the Supreme Court said: "It is not an Act of general applicability to industry. It applies only to contractors who voluntarily enter into competition to obtain government business on terms of which they are fairly forewarned by inclusion in the contract." The procedure of the Secretary of Labor in that matter was strictly in accordance with the provisions of the Walsh-Healey Act. Endicott Johnson production was admittedly devoted in part to government contracts and subject to that Act. It is true that originally the Supreme Court had accepted the case partly because of possible conflict with General Tobacco & Grocery Co. v. Fleming, 6 Cir., 125 F.2d 596, 140 A.L.R. 783, which had held that in a Fair Labor Standards case, coverage must be proved as a prerequisite to enforcement. The opinion, however, was confined solely to interpretation of the Walsh-Healey Act. It is so construed in Walling v. Benson, 8 Cir., 137 F.2d 501, 506. There, as here, the Administrator had made no showing at all. The entire basis of that decision is that the Administrator must show the equivalent of probable cause in order to have the district court issue such subpœna, with the court holding that the extent of the showing in an individual case "must necessarily and fundamentally be left to the sound discretion and judgment of the district court." The Benson matter was sent back to the district court to permit the Administrator "to amend his application, if he can and wishes to do so, to allege that he has reasonable ground to believe that appellees' business is subject to the Act, *as a basis for any showing that he is able and may desire to make on the further hearing in the district court.*" (Emphasis supplied.)

The majority opinion concedes that "The execution of a subpœna such as that in the case at bar rests in the legal discretion of the district courts." It then denies such discretion by saying that here it must be exercised in favor of the Administrator, who had made no showing whatsoever on which to base his allegations of coverage and repeated violations.

I would affirm the judgment of the district court.