OKLAHOMA PRESS PUB. CO. v. WALLING, Administrator of the Wage and Hour Division.

No. 3036.

Circuit Court of Appeals, Tenth Circuit.

Feb. 15, 1945.

Elisha Hanson, of Washington, D. C. (Joseph C. Stone and Charles A. Moon, both of Muskogee, Okl., on the brief), for appellant.

Douglas B. Maggs, of Washington, D. C. (Bessie Margolin, of Washington, D. C., Llewellyn B. Duke, of Dallas, Tex., and Flora G. Chudson, of Washington, D. C., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The primary question presented by this appeal is whether the Administrator of the Wage and Hour Division of the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S. C.A. § 201 et seq. is entitled to an order of the District Court enforcing an investigatory subpoena, issued by the Administrator in pursuance of Section 9 of the Act, for the purposes enumerated in Section 11(a) thereof, without a prior adjudication by the court to the effect that the industry or activity sought to be investigated by the subpoena is subject to and covered by the provisions of the Fair Labor Standards Act, and if so, what considerations govern the court in the enforcement of the subpoena.

Section 11(a) of the Act authorizes the Administrator to "investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this Act, and [he] may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this Act." Section 11(c) requires every employer subject to any provision of the Act to make and keep records of wages, hours, and other conditions of employment and to make reports therefrom, as prescribed by regulations of the Administrator, "necessary or appropriate for the enforcement of the provisions of the Act."

When permission to "enter and inspect", as authorized by Section 11(a), is denied to the Administrator or his subordinates, the Administrator is authorized by Section 9 of the Act (which adopts sections 9 and 10 of the Federal Trade Commission Act, 38 Stat. 717, 15 U.S.C.A. §§ 49, 50) to issue a subpoena requiring the attendance and testimony of witnesses and the production of all documentary evidence relevant to any matter under investigation authorized by Section 11(a), at any designated place of hearing. In the event of disobedience to the subpoena, the Administrator may invoke the aid of any court of the United States having jurisdiction of the subpoenaed party, and such court may issue an order requiring the recalcitrant witness to obey the subpoena. Failure to obey such order of the court is punishable as a contempt thereof.

After being denied permission to examine the books and records of the appellant, Oklahoma Press Publishing Company, under Section 11(a) of the Act, the Administrator issued a subpoena duces tecum, directed to the appellant, requesting the production of "books, papers, and documents showing the hours worked by, and wages paid to, each of your employees between October 29, 1938, and the date hereof, including all payroll ledgers, time sheets and cards, and time clock records, and all your books, papers and documents showing the distribution of papers, out of the state of Oklahoma, the dissemination of news outside of the state of Oklahoma, and the source and receipt of advertisements of nationally advertised goods". Acting upon the belief that neither it nor its employees were "subject to the Act", appellant refused to obey the subpoena, whereupon the Administrator applied to the District Court for an order compelling obedience as authorized in Section 9.

The application alleged on information and belief that the appellant, as publisher of two daily newspapers, was engaged in commerce or in the production of goods for commerce within the meaning of the Act, and that all the books, records, papers and documents referred to in the subpoena were "relative, material, and appropriate" to determine whether the company had violated the Act, and would "aid in the enforcement of the provisions of the Act". By answer to the show cause order, appellant alleged that neither it nor any of its employees were engaged in commerce or in the production of goods for commerce; that a forced investigation would be an unreasonable search and seizure, and, moreover, any attempted regulation of its business violated the freedom of the press. In the alternative, it was alleged that if appellant or any of its employees are engaged in commerce or in the production of

goods for commerce, as a newspaper publisher, it is a service establishment as defined by Section 13(a) (2) of the Act and therefore exempt from its coverage.

The application for the enforcement order was submitted to the trial court upon the foregoing pleadings and accompanying affidavits. Upon the facts thus established and on authority of Sun Publishing Company v. Walling, 6 Cir., 140 F.2d 445, the trial court adjudged the appellant "subject to the Wage and Hour Act", and upon this premise ordered appellant to comply with the subpoena.

On appeal appellant makes the contention that compulsory obedience to the investigatory subpoena constitutes an unreasonable search and seizure, unless the court first adjudicates the question of coverage, and that the summary proceedings pursuant to which the trial court ordered obedience to the subpoena did not afford it an opportunity to have the question of coverage determined in a full and complete proceedings conducted for that purpose. In other words, it is argued that the appellant may bar the investigator at the threshold until it is conclusively shown that the matters and things sought to be investigated by the subpoena are within the scope of the Act, which authorizes its issuance. Relying upon Endicott Johnson v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, the Administrator makes the contention that he is entitled, as of right, to an order of enforcement upon the bare allegations contained in his application for the order, without any further showing of coverage—that any less expeditious assistance would greatly hinder the effectuation of the purposes of the Act. It is further urged that in any event, the showing made

in the summary proceedings was entirely sufficient to justify the order of enforcement.

■ In order to effectuate the purposes of the Act, the Administrator is authorized to "enter", "inspect" and "investigate", and when denied permission he may issue a subpoena requiring the appearance and testimony of witnesses, and the production of the documentary evidence sought to be inspected, but the Administrator has no power to compel obedience to the subpoena—such powers have historically resided in the courts as an appropriate exercise of a judicial function.[1] Interstate Commerce Commission v. Brimson, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047. Like most acts of similar import (see footnote 1), Section 9, 15 U.S.C.A. § 49, which confers jurisdiction, provides that the court "may * * * issue an order requiring" obedience to the subpoena.[2] "The language is not mandatory, but permissive." Mississippi Road Supply v. Walling, 6 Cir., 136 F.2d 391, 394. It clearly envisages a judicial act, and in the classical words of Judge Johnsen of the Eighth Circuit, "judicial enforcement necessarily is the exercise of judicial power, and judicial function can never wholly escape the test of judicial responsibility." Walling v. Benson, 137 F.2d 501, 504.

Endicott Johnson Corp. v. Perkins, supra, involved the relationship of the courts to the subpoena power of the Secretary of Labor under Section 4 of the Walsh-Healey Public Contracts Act. The Circuit Court of Appeals, 2 Cir., 128 F.2d 208, and the Supreme Court, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424, held that in the circumstances, the District Court should have enforced the subpoena, but we do

---

[1] The following acts of Congress creating administrative agencies and tribunals with subpoena power specifically delegate to the courts the power to enforce the subpoenas: Interstate Commerce Act, 41 Stat. 484, 49 U.S.C.A. § 12(3); Federal Power Act, 49 Stat. 856, 863, 16 U.S.C.A. 825f(c); Merchant Marine Act, 52 Stat. 954, 46 U.S.C.A. § 1124(b); Veterans Administration Act, 49 Stat. 2033, 38 U.S.C.A. § 133; Walsh-Healey Act, 49 Stat. 2038, 1921, 41 U.S. C.A. § 39; Railroad Unemployment Ins. Act, 54 Stat. 1099, 45 U.S.C.A. § 362(b); Securities Act of 1933, 48 Stat. 86, 49 Stat. 1921, 15 U.S.C.A. § 77v(b); Securities Exchange Act of 1934, 49 Stat. 1379, 1921, 15 U.S.C.A. § 78u(b); Pub-

lic Utility Holding Co. Act, 49 Stat. 831, 1921, 15 U.S.C.A. § 79r(d); National Labor Relations Act, 49 Stat. 455, 1921, 29 U.S.C.A. § 161(2). See also the Enforcement of Administrative Subpoenas, 44 Columbia Law Review, July 1944, p. 531.

[2] With the exception of the National Labor Relations Act and the Walsh-Healey Act, which merely confer jurisdiction upon the courts to issue an order requiring obedience to the subpoena, and the Railroad Unemployment Insurance Act, which provides that the court "shall" issue an order compelling obedience to the subpoena. See footnote 1.

not understand that in so holding it intended to sweep away all power of judicial discretion. In reaching its decision, the court noted that the Walsh-Healey Act had peculiar application to those doing business by voluntary contract with the United States Government; that under its provisions the issue of coverage was primarily the duty of the Secretary of Labor and not the courts, and that since the evidence sought by the subpoena was not plainly incompetent or irrelevant to the discharge of that lawful function, it was the duty of the court to order the production of the records sought by the subpoena. Unlike the Walsh-Healey Act, the ultimate issue of coverage under the Fair Labor Standards Act is a judicial question committed to the courts and not to the Administrator. We do not think that the philosophy of Endicott Johnson Corp. v. Perkins, supra, is authority for the contention of the Administrator to the effect that the courts are deprived of the power of discretion in the performance of the judicial function expressly committed to them and denied to the Administrator.

■ It is, of course, fundamental that any invasion or intrusion upon the privacy of an individual's business or home must have the sanction of both constitutional and legislative authority, and any process issued for that purpose must confine its requirements within the limits which reason would impose under the circumstances of the case. Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774; Shotkin v. Nelson, 10 Cir., 146 F.2d 402; McGarry v. Securities and Exchange Commission, 10 Cir., 147 F.2d 389; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Essgee Co. v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786. See also Cooley's Constitutional Limitations, p. 610.

■ In delineating the proper functions of the courts in the exercise of their jurisdiction to enforce subpoenas in aid of investigatory powers of administrative agencies, the courts as well as Congress have recognized the duty to guard against the evils which inevitably spring from the injudicious exercise of the power to issue an investigatory subpoena. See Interstate Commerce Commission v. Brim-

son, 154 U.S. 447, 14 S.Ct. 1125, 38 L.Ed. 1047; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Cudahy Packing Co. v. Holland, 315 U.S. 357, 788, 62 S.Ct. 651, 86 L.Ed. 895. It is said that constitutional provisions prohibiting unreasonable search and seizure "should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by imperceptible practice of courts or by well-intentioned, but mistakenly over-zealous, executive officers." Gouled v. United States, 255 U.S. 298, 304, 41 S. Ct. 261, 263, 65 L.Ed. 647. But they must be construed so as to serve the public interest as well as individual rights. Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. Especially is this true where, as here, the law regulates that which it seeks to investigate. Wilson v. United States, 221 U.S. 361, 384, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384; Rodgers v. United States, 6 Cir., 138 F.2d 992. To again borrow the language of Judge Johnsen in Walling v. Benson, supra, "In a field of declared public interest, —such as the Fair Labor Standards Act [29 U.S.C.A. § 1 et seq.] clearly is—the courts must give full, facilitating co-operation to the exercise of authorized administrative powers and duties, if no possible threat to fundamental rights and concepts is involved. But, in their desire to measure up to this obligation, they must not sweep aside the fundamental and inherent concept that a judicial responsibility is owing for any judicial function that they are called upon to perform—a responsibility that necessarily must soundly cover (but not attempt to extend beyond) the scope of the required function."

An officer of the law is entitled to invade the privacy of one's home on the authority of a warrant issued by a magistrate upon an affidavit of probable cause, and the person whose home is searched is afforded no opportunity to be heard concerning the validity of the warrant or the unreasonableness of the search until after it has been made, and he is called upon to answer for a criminal offense based thereon. See Gouled v. United States, 255 U.

S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Dumbra v. United States, 268 U.S. 435, 45 S.Ct. 546, 69 L.Ed. ·1032. Surely it is not argued that the right of a person to be secure in his business from an unreasonable investigation under an administrative subpoena is greater or more sacred than the right of a person to be secure from unreasonable search and seizure in the privacy of his home. The rule of probable cause has always been deemed an adequate safeguard against unreasonable search and seizure and we think the measure of protection it affords fulfills the spirit of the constitutional guaranty in civil cases of this kind.

 When judged by this test, it is plain that the appellant is not entitled to an adjudication of actual coverage as a prerequisite to the enforcement of the subpoena, rather the orderly and efficient enforcement of the Act within the framework of the constitutional rights of the parties involved, require only that the District Court have "the assurance that it is not giving judicial sanction and force to unwarranted and arbitrary action, but that reasonable grounds exist for making the investigation." Walling v. Benson, 8 Cir., 137 F.2d 501.[3] In judicially determining whether an investigation sought by an administrative subpoena is constitutionally reasonable, it is essential to consider whether the testimony and the data sought to be produced are pertinent to an inquiry which the Administrator is authorized by law to conduct in order to perform the functions imposed upon him by the Act. Shotkin v. Nelson, 10 Cir., 146 F.2d 402; McGarry v. Securities and Exchange Commission, 10 Cir., 147 F.2d 389.

 The Administrator is statutorily charged with the primary duty of enforcing the wage and hour provisions of the Fair Labor Standards Act, and to that end he is authorized by Section 11(a) to investigate and gather data regarding the "wages, hours, and other conditions and practices of employment in any industry subject to the Act." This particular prerogative is addressed to an industry as a whole and presupposes that the industry is "subject to the Act", but the Administrator is also empowered to enter, inspect and investigate such conditions, practices

or matters which he may deem necessary or appropriate to determine whether any person has violated the Act, or to conduct any investigations which may aid in the enforcement of the provisions of the Act. Application of Holland, D.C., 44 F.Supp. 601, affirmed Walling v. Standard Dredging Corp., 2 Cir., 132 F.2d 322; Walling v. American Rolbal Corp., 2 Cir., 135 F.2d 1003. This phase of the investigatory powers does not presuppose coverage, but is to enable the Administrator to determine whether any employer or employee is subject to the Act, and if the Act has been violated.

The subpoena in this case sought to compel the production of data in respect to the hours worked and wages paid to appellant's employees which is relevant to the question whether any provision of the Act had been violated. The subpoena also sought the production of data pertaining to the interstate activities of the appellant, which obviously relate to the question whether it or any of its employees is engaged in commerce or in the production of goods for commerce, and are therefore subject to the Act. To hold that the Administrator cannot compel the production of data relating to coverage until that question has been conclusively determined, is to deny him the very powers deemed necessary in order to effectuate the purposes of the Act.

 The application for the enforcement order alleged that upon information and belief the appellant was subject to the Act and that it was violating the wage and hour provisions thereof. By the subpoena the Administrator purposed to obtain data upon which the issue of coverage and violations would ultimately be judicially determined. When the matter was submitted to the trial court on the rule to show cause, it concluded coverage, but it did not have to go that far. If the application and accompanying affidavits furnished reasonable grounds for the belief that appellant or any of its employees were subject to the Act, it became the inescapable duty of the court to compel obedience to the subpoena. The ultimate question of coverage or violations was not presented on the record before the trial court, nor is it presented or decided here. It is time enough to consider that question

[3] In arriving at this conclusion we are not unmindful of the contra view expressed in General Tobacco & Grocery Co. v. Fleming, 6 Cir., 125 F.2d 596, 140 A.L.R. 783.

when all the evidence sought to be produced by the subpoena is before the court in a proceeding directly involving violations based on coverage.

"The publisher of a newspaper has no special immunity from the application of general laws," Associated Press v. National Labor Board, 301 U.S. 103, 57 S. Ct. 650, 656, 81 L.Ed. 953, including the Fair Labor Standards Act, Sun Publishing Company v. Walling, 6 Cir., 140 F.2d 445, and uniform regulations imposed upon those covered by the Fair Labor Standards Act are not an abridgement of the freedom of the press.

The judgment is affirmed.