**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Petitioner - Appellant,

v.

DILLON COMPANIES, INC., d/b/a
King Soopers, Inc.,

      Respondent - Appellee.

No. 01-1478

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 01-M-875)**

---

John F. Suhre (Susan L.P. Starr; Nicholas M. Inzeo, Acting Deputy General
Counsel; Philip B. Sklover, Associate General Counsel; Vincent J. Blackwood,
Assistant General Counsel, with him on the briefs), Equal Employment
Opportunity Commission, Washington, District of Columbia, for Petitioner-
Appellant.

Edward J. Butler (Raymond M. Deeny, with him on the brief), Sherman &
Howard, L.L.C., Colorado Springs, Colorado, for Respondent-Appellee.

---

Before **HENRY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **LUCERO** ,
Circuit Judge.

---

**LUCERO** , Circuit Judge.

---

This is an appeal from a district court order partially denying the petition of the Equal Employment Opportunity Commission ("EEOC") for enforcement of an administrative subpoena relating to an investigation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117.  The primary issue presented is whether an EEOC administrative subpoena seeking information about job vacancies is enforceable against an employer who asserts that such information is irrelevant because of the employer's entrenched seniority system.

The district court's order is a final judgment,       see EEOC v. Citicorp Diners Club, Inc. , 985 F.2d 1036, 1038 (10th Cir. 1993), and we have jurisdiction pursuant to 28 U.S.C. § 1291.  We conclude that the subpoena is enforceable in its entirety.

## I

The EEOC issued the administrative subpoena in furtherance of its investigation concerning a discrimination claim made by Emily Bexley, a former employee of Dillon Companies, Inc. (doing business, and referred to herein, as "King Soopers").  Bexley, who began her employment with the company in 1976, is an insulin-dependent diabetic who has worked since 1995 in the Produce Head Clerk position at the King Soopers store in Greeley, Colorado.  In January 1996, Bexley informed the Greeley store manager that her doctor had restricted her to a

7:00 a.m. to 3:30 p.m. work schedule. King Soopers determined that it could not accommodate such a work restriction in the Produce Head Clerk position, and asked its store manager to review available positions in the Greeley store to see if there were any that would meet Bexley's work-schedule restrictions. The store manager identified two such positions—All Purpose Clerk-Checker and Courtesy Clerk—but Bexley rejected them because they offered a substantial reduction in, respectively, hours and pay.

Bexley thereupon resigned from the company and filed a charge of disability discrimination with the EEOC, claiming that the jobs she was offered were not a reasonable accommodation of her disability and that she had been constructively discharged. During the course of its investigation of Bexley's charges, the EEOC issued a subpoena to King Soopers seeking three groups of information: (1) a list of all employees working in the All Purpose Clerk-Checker position in the Greeley store in February 1996, identified by name, date of hire, date in that position, and years of seniority; (2) a list of all employees working in that position in the Loveland, Colorado store in February 1996, identified in the same way; and (3) a list of all employees working in that position in the Boulder, Colorado store in February 1996, also identified in the same way. With respect to these requests, the subpoena also sought a "list of specific shift times that All Purpose Clerk-Checkers could be assigned at each of the three above-mentioned

stores." (EEOC App. at 30.) The EEOC claimed it needed this information in order to determine whether or not there was another position available that King Soopers could have offered Bexley as a reasonable accommodation.

After King Soopers refused to comply with the subpoena, the EEOC brought enforcement proceedings before a magistrate judge. In response to the magistrate's order to show cause, King Soopers argued that the information sought by the EEOC was not relevant to the claims at issue (1) because by offering Bexley the checker position in the Greeley store, King Soopers had complied with its duties under the ADA, and (2) because collective bargaining agreements ("CBAs") and entrenched company policies at the Boulder and Loveland stores precluded Bexley from taking a position at either of those locations. In rejecting King Soopers' first argument, the magistrate noted that under Tenth Circuit precedent "it is at least arguable that, if more than one position is available as an accommodation, the employer must offer positions which tend toward equivalency with the employee's original position." (App. of EEOC at 12 (citing Smith v. Midland Brake, Inc., 180 F.3d 1154, 1177 (10th Cir. 1999)).) Considering King Soopers' second argument, however, the magistrate refused to order enforcement of the EEOC subpoena to the extent that it sought information concerning the Loveland and Boulder stores, because "it was undisputed that King Soopers' Boulder and Loveland stores are subject to

-4-

collective bargaining agreements" ( id. at 13), and therefore "any positions open at these stores cannot be considered to have been vacant for the purpose of Ms. Bexley's ADA claim" ( id. at 14).

In sum, the magistrate ordered enforcement of the EEOC's subpoena with respect to its request for information about the Greeley store, but refused to enforce as irrelevant the subpoena's demand for information concerning the Boulder and Loveland stores. The EEOC's objections to the magistrate's order were overruled by the district court. Before us the EEOC appeals the decision below not to enforce the subpoena with respect to its request for information about the Boulder and Loveland stores. [1]

## II

"We review the district court's rulings on subpoenas for an abuse of discretion." United States v. Castorena-Jaime , 285 F.3d 916, 930 (10th Cir. 2002).

Congress has empowered the EEOC to investigate charges alleging violations of the ADA, incorporating by reference the enforcement scheme set forth in Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 12117. Pursuant to Title VII, once a claim has been filed by an aggrieved individual, the

---

[1] At oral argument, King Soopers confirmed that it does not contest the district court's decision to enforce the subpoena with respect to the request for information about the Greeley store.

EEOC must conduct an investigation of the allegations. § 2000e-5(b). In connection with its inquiry, the EEOC is entitled to access "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this title and is relevant to the charge under investigation." § 2000e-8(a). To obtain such evidence, the EEOC may exercise all of the powers conferred upon the National Labor Relations Board by 29 U.S.C. § 161, including the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas. § 2000e-9. As noted above, however, "unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation.'" EEOC v. Shell Oil Co. , 466 U.S. 54, 64 (1984) (quoting § 2000e-8(a); footnote omitted). This statutory scheme places the burden on the EEOC to demonstrate the relevance of the information requested in its subpoena. See EEOC v. S. Farm Bureau Cas. Ins. Co. , 271 F.3d 209, 211 (5th Cir. 2001) ("The district court will enforce the EEOC's subpoenas when the EEOC carries its burden of demonstrating that the information requested is relevant to the charge filed against the employer.").

The Supreme Court has explained that the "relevancy" limitation on the EEOC's investigative authority is "not especially constraining." Shell Oil , 466

-6-

U.S. at 68.  Moreover, courts have traditionally allowed the EEOC access to any information "that might cast light on the allegations against the employer."  Id.; see also United States v. Arthur Young & Co., 465 U.S. 805, 813–14 (1984) (adopting a comparably expansive definition of "relevance" in the analogous context of an IRS subpoena).  Although the Supreme Court has advised that the relevance standard must not be interpreted so broadly as to render the statutory language a "nullity," Shell Oil, 466 U.S. at 68, we have explained (1) that an EEOC administrative subpoena "is enforceable even though no 'probable cause' has been shown," (2) that even some requests we "previously considered to be administrative 'fishing expeditions' are often permitted," and (3) that such subpoenas "may be enforced for investigative purposes unless they are plainly incompetent or irrelevant to any lawful purpose." EEOC v. Univ. of N.M., Albuquerque, 504 F.2d 1296, 1303 (10th Cir. 1974); see also EEOC v. United Air Lines, Inc., 287 F.3d 643, 652–53 (7th Cir. 2002) (making similar observations).

The information requested by the EEOC in the present case appears on its face to be relevant to Bexley's charge that she was not offered a reasonable accommodation by King Soopers.  If the company had an opening for a position that was a near-equivalent to the one Bexley had surrendered, then King Soopers' failure to offer her that position would be material to whether the "reasonable accommodation" requirements of the ADA, 42 U.S.C. §§ 12111–12112, had been

met. As noted above, however, the magistrate concluded that with respect to the Loveland and Boulder stores such information could  not  be relevant to the EEOC's investigation because those two stores were subject to CBAs pursuant to which any "vacant" positions were, in reality, already spoken for.  See Midland Brake , 180 F.3d at 1175 ("[A]n existing position would not truly be vacant, even though it is not presently filled by an existing employee, if under a collective bargaining agreement other employees have a vested priority right to such vacant positions."). The magistrate's determination, however, cannot stand.

We first note that although in  Midland Brake  we did discuss the effect that a CBA may have on the vacancy status of an employment position, we did not have occasion to address the distinct question of whether a subpoena requesting information about such a position could ever be relevant to an EEOC investigation. In fact, we are dubious of the magistrate's assumption that the existence of a CBA would necessarily render irrelevant the type of information sought by the EEOC in a case such as this one. [2] Nonetheless,  we need not

---

[2] In its objections to the magistrate's order, for example, the EEOC noted at least one way in which its request for information remains relevant despite the existence of a CBA:

> [E]ven under a collective bargaining agreement, when there is a position to be filled, some type of notice goes out or a posting appears in the appropriate place, either of which serves to provide notice of an available position and an opportunity to bid on a

(continued...)

address this particular question for the simple reason that the magistrate's factual premise was wrong. As the EEOC noted in its objections to the magistrate's order, the CBAs at the Loveland and Boulder stores do <u>not</u> cover the checker position about which the EEOC sought information. King Soopers, in its response to the EEOC's objections, accordingly conceded—albeit tucked away in a footnote—that "the positions at issue here are not covered by a CBA." (EEOC App. at 70 n.4.) Although the district court conducted a de novo review of the record, it adopted the magistrate's order and its reasoning in its entirety. Because the factual predicate underlying the magistrate's reasoning—and the district court's affirmance of the order—was clearly erroneous, we must conclude that it was an abuse of discretion for the court to rely on the existence of CBAs at the Loveland and Boulder stores as grounds for quashing the EEOC's subpoena.

King Soopers argues that we should nonetheless affirm the district court's partial quashing of the subpoena on the alternative ground that it has a "well-established policy mandating that the employees within a particular store or geographic area have the right to any vacancy within that store or geographic area

---

[2](...continued)
position. At some point, an employee either bids on and obtains the 'vacant' position, or a new hire occurs to fill the 'vacant' position.

(EEOC App. at 56.) It would seem relevant to Bexley's claims to learn whether a position had, in fact, survived the CBA process and resulted in the hiring of a new employee without the position having been offered first to Bexley.

before anyone from the outside can be considered." (Appellee's Br. at 17.) It cites Midland Brake for the proposition that employers are "not required to violate other employment policies in order to provide a reassignment as an accommodation" ( id. at 16), and then suggests that, pursuant to this reading of Midland Brake , the information sought by the EEOC in its subpoena cannot possibly be relevant to its investigation. King Soopers' argument must fail for two reasons.

First, as the EEOC notes in its brief,

> Even if King Soopers has a policy of preferring incumbent employees of a given store in filling vacancies, that policy would be relevant to Bexley's charge only with respect to positions that were filled by incumbents. If King Soopers filled any of the positions with new hires, the asserted policy would have no bearing since Bexley would not have been competing with an incumbent for those positions.

(Appellant's Br. at 15.) Stated differently, the information requested by the EEOC remains relevant—even in light of King Soopers' entrenched policy of preferring a store's incumbent employees when filling vacancies—to determine whether there was in fact a position that was either not offered to any incumbents or not accepted by any incumbent. In such circumstances, a position might in fact have been open to Bexley and offered to her as an accommodation. We agree with the EEOC that the information it seeks through its subpoena might shed light on whether King Soopers in fact followed through on its policy and whether,

despite the policy, a position was nonetheless open and available to Bexley as a reasonable accommodation.

Second, Midland Brake simply does not state the proposition of law that King Soopers claims. Unlike its more definitive discussion of the consequences that a CBA will have on the "vacancy" status of a potentially open position, Midland Brake does not pretend to hold that an employer's mere assertion of an entrenched employment policy should be determinative of whether a given position is or is not vacant for labor-dispute purposes. In Midland Brake, we explained only that "there may be other important employment policies besides protecting rights guaranteed under a collective bargaining agreement that would make it unreasonable to require an employer to reassign a disabled employee to a particular job." 180 F.3d at 1175–76 (emphasis added). To illuminate this proposition, we used as an example the case of a "well entrenched seniority system which . . . is so well established that it gives rise to legitimate expectations by other, more senior employees to a job that the disabled employee might desire." Id. at 1176. Nonetheless, we couched this observation in noncommittal language, and merely stated that requiring an employer to violate the reasonable expectations of seniority rights in favor of a disabled employee "could, at least under some circumstances, constitute a fundamental and

unreasonable alteration in the nature of an employer's business."    Id. (emphasis added).

For present purposes, the import of the above-quoted passages is that whether a well-entrenched seniority system suffices to "take off the table" a position that might otherwise serve as a reasonable accommodation is a context-specific inquiry that cannot be resolved in an informational vacuum, based only on the say-so of the employer.  This conclusion is buttressed by the Supreme Court's holding last Term that "[t]he simple fact that an accommodation would provide a 'preference'—in the sense that it would permit the worker with a disability to violate a rule that others must obey—cannot,    in and of itself, automatically show that the accommodation is not 'reasonable.'"    U.S. Airways, Inc. v. Barnett, 122 S. Ct. 1516, 1521 (2002).  Should King Soopers eventually find itself hauled into court to defend against Bexley's claim that the company violated the ADA by failing to offer her a reasonable accommodation, King Soopers will of course be free to argue in its defense that its well-entrenched seniority system precluded offering her a position in its Loveland or Boulder stores.  We will not, however, either encourage or allow an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial.    See Shell Oil, 466 U.S. at 72 n.26 (rejecting the argument that "a district court, when deciding

-12-

whether to enforce a subpoena issued by the EEOC, may and should determine whether the charge of discrimination is 'well founded' or 'verifiable'"); see also Univ. of N.M. , 504 F.2d at 1303 (holding that a "subpoena duces tecum is enforceable even though no 'probable cause' has been shown"); NLRB v. Dutch Boy, Inc. , 606 F.2d 929, 933 (10th Cir. 1979) ("Because . . . piecemeal appeals will disrupt and delay resolution of labor disputes, parties opposing the Board may not interpose defenses to the merits of the underlying unfair labor practice charges in subpoena enforcement actions.").

Finally, King Soopers briefly argues that the information sought by the EEOC in its subpoena is not relevant because the company already offered Bexley a reasonable accommodation by proffering her a pair of positions at its Greeley store. Rejecting this argument below, the magistrate judge concluded that the EEOC's subpoena might have cast light on whether King Soopers' offer of positions with lower pay or fewer hours was a reasonable accommodation. As we explained in Midland Brake , an employer "may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation." 180 F.3d at 1166 (citing 29 C.F.R. § 1630.2(o); emphasis added). We agree with the ruling below that "[u]nder Midland Brake , it is at least arguable that, if more

-13-

than one position is available as an accommodation, the employer must offer positions which tend toward equivalency with the employee's original position." (EEOC App. at 12.)  Once again, we refuse King Soopers' request to litigate in a subpoena-enforcement proceeding a question that essentially goes to the merits of its ADA defense.  Because the EEOC's subpoena seeks information that might shed light on Bexley's charges and that is not plainly irrelevant, the subpoena must be enforced.

### III

The district court's order quashing the EEOC's subpoena with respect to information sought about King Soopers' Loveland and Boulder stores is **REVERSED** .  In all other respects the district court's order is **AFFIRMED** . This matter is **REMANDED** with instructions to enforce the EEOC's administrative subpoena in its entirety.