**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 7, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

CSG WORKFORCE PARTNERS, LLC;
CSG EXTERIORS, LLC; CSG
DRYWALL, LLC; CSG FRAMING,
LLC; CSG INTERIORS, LLC; CSG
PAINTING, LLC; CSG
LANDSCAPING, LLC,

        Plaintiffs-Appellants,

v.

CYNTHIA C. WATSON, Regional
Administrator of the Wage and Hour
Division, U.S. Department of Labor,

        Defendant-Appellee.
_____

HILDA SOLIS, Secretary of Labor for
the United States Department of Labor,

        Petitioner-Appellee,

v.

CSG WORKFORCE PARTNERS, LLC;
CSG EXTERIORS, LLC; CSG
DRYWALL, LLC; CSG FRAMING,
LLC; CSG INTERIORS, LLC; CSG
PAINTING, LLC; CSG
LANDSCAPING, LLC,

        Respondents-Appellants.

No. 12-4027
(D.C. No. 2:11-CV-00834-TS)
(D. Utah)

No. 12-4028
(D.C. No. 2:11-CV-00903-TC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **GORSUCH**, Circuit Judges.

In these appeals, consolidated for disposition, appellants seek review of two district court judgments. In Case No. 12-4027, appellants contest the district court's dismissal of their action for lack of jurisdiction. In Case No. 12-4028, appellants seek reversal of the district court's order granting the United States Department of Labor's petition for the enforcement of an administrative subpoena related to its investigation of appellants' compliance with the Fair Labor Standards Act. We have jurisdiction under 28 U.S.C. § 1291 and affirm both judgments.

## I. BACKGROUND

Plaintiff CSG Workforce Partners, LLC, and its related entities (also plaintiffs here) (collectively, CSG), provide a variety of construction services. Each was formed and operates as a limited liability company (LLC) under the Utah Revised Limited Liability Company Act, Utah Code Ann. §§ 48-2c-101 to 48-2c-1902.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In June 2010, the Wage and Hour Division of the United States Department of Labor (DOL) initiated a compliance review to evaluate CSG's conformity with the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (FLSA). DOL requested a number of documents from CSG to determine whether CSG's members (also referred to by the parties as "member-partners") were covered by the FLSA. CSG provided DOL with a detailed opinion letter from its attorney explaining why CSG's members were not covered by the FLSA, and it cooperated with DOL's requests until DOL began seeking documents related to alleged FLSA violations rather than FLSA coverage. CSG then resisted producing documents, and on August 31, 2011, DOL issued an administrative subpoena duces tecum seeking information about hours worked by current or former CSG members, shares issued by each of the CSG LLCs, total dollar volume of CSG's business from 2008-10, and lists of service contracts and current or future projects in which CSG had any involvement. On September 7, 2011, DOL informed CSG it had determined all of CSG's members (approximately 821 at the time) were employees for purposes of FLSA coverage and that it sought the subpoenaed information to determine whether there was joint employer status with any of its customers.

Upon CSG's request, DOL extended the time to respond to the subpoena from September 9 to September 16, but on September 14, CSG filed the action underlying Case No. 12-4027. CSG alleged that under Utah LLC law, its members are considered partners, not employees, and therefore are not subject to the FLSA, which

- 3 -

applies only to employees.[1]  CSG asked the district court for a determination to that effect and an order quashing the subpoena.  DOL moved to dismiss for lack of jurisdiction on the ground of sovereign immunity.  CSG responded that the court had jurisdiction under an exception to sovereign immunity for ultra vires actions by officers and agencies of the United States.

The district court granted the motion to dismiss.  The court determined that, in issuing the subpoena, DOL was acting within Congress's grant of investigatory authority, *see* 29 U.S.C. § 211(a),[2] and subpoena power, *see id.* § 209; 15 U.S.C. § 49.[3]  The court observed that sovereign immunity's ultra vires exception does not

---

[1]    DOL does not dispute that bona fide, self-employed partners are not subject to the FLSA.  The relevant Utah statute, Utah Code Ann. § 48-2c-103, provides that "'Partnership' and 'limited partnership,' when used in any chapter or title other than this chapter or Title 48, Chapter 1, General and Limited Liability Partnership, and Title 48, Chapter 2a, Utah Revised Uniform Limited Partnership Act, are considered to include a company organized under this chapter [covering LLCs], unless the context requires otherwise."

[2]    In relevant part, 29 U.S.C. § 211(a) provides:

> The Administrator or his designated representatives may investigate and gather data regarding the wages, hours, and other conditions and practices of employment in any industry subject to this chapter, and may enter and inspect such places and such records (and make such transcriptions thereof), question such employees, and investigate such facts, conditions, practices, or matters as he may deem necessary or appropriate to determine whether any person has violated any provision of this chapter, or which may aid in the enforcement of the provisions of this chapter.

[3]    In 29 U.S.C. § 209, Congress provided the Secretary of Labor, who heads the DOL, with the authority to subpoena witnesses set out in 15 U.S.C. § 49.

apply to "an incorrect decision as to law or fact, if the officer making the decision was empowered to do so." *Wyoming v. United States*, 279 F.3d 1214, 1229-30 (10th Cir. 2002) (internal quotation marks omitted). The court therefore concluded that the exception was inapplicable because it was based on CSG's view that DOL had erred in the coverage determination.

Meanwhile, on September 27, 2011, DOL filed in the district court a Petition To Enforce Administrative Subpoena (Petition), which is the action underlying Case No. 12-4028. Affidavits attached to the Petition stated as follows: CSG primarily contracts with construction companies to provide the labor of its members, and CSG "has been instrumental in converting its clients' employees into CSG member-partners . . . and then providing these same member-partners back to its clients as laborers." No. 12-4028, Aplt. App. at 14. The laborers sign a membership agreement but do not make any investment in CSG. In this fashion, CSG, which does not maintain time records for its members, is able to skirt FLSA's requirement that employers pay their employees one-and-a-half times their regular wage for work in excess of 40 hours a week, *see* 29 U.S.C. § 207(a)(1). Two of CSG's clients were joint employers of CSG members, and the subpoenaed documents were "essential to identify potential joint employers of the CSG member[]-partners, determine the hours the member-partners have worked, compute any back wages that are due to CSG member-partners, and to establish the actual annual dollar volume of the CSG enterprise." No. 12-4028, Aplt. App. at 17.

CSG responded to an order to show cause why the subpoena should not be enforced, again contending that DOL lacked authority to subpoena documents related to FLSA compliance (as opposed to coverage) because CSG's members are not covered by the FLSA. A magistrate judge recommended that the district court grant the Petition, finding that DOL had met its burden under *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980), to show that the subpoena was "not too indefinite" and "reasonably relevant to an investigation which the agency has authority to conduct," and that "all administrative prerequisites [had] been met." The magistrate judge determined that CSG had not shown cause why the subpoena should not be enforced. The magistrate judge relied on our statement in *EEOC v. Dillon Cos.*, 310 F.3d 1271, 1277 (10th Cir. 2002), that "[w]e will not . . . encourage or allow an employer to turn a summary subpoena-enforcement proceeding into a mini-trial by allowing it to interpose defenses that are more properly addressed at trial." The district court adopted the recommendation as the order of the court and gave CSG thirty days to provide the subpoenaed information.

## II.    DISCUSSION

### A.    Case No. 12-4027

To reiterate briefly, the district court dismissed CSG's complaint in this matter on the ground that defendants were entitled to sovereign immunity from CSG's attempt to quash the subpoena and obtain a judicial order stating that its members were partners under Utah law and therefore not subject to the FLSA. We review de

novo the district court's conclusion that DOL was protected by the doctrine of sovereign immunity. *See FTC v. Kuykendall*, 466 F.3d 1149, 1154 (10th Cir. 2006). So doing, we readily agree with the district court's conclusion.

The "application of the ultra vires exception to the sovereign immunity doctrine rest[s] upon the officer's lack of delegated power . . . or . . . lack of statutory authority." *Wyoming*, 279 F.3d at 1229 (internal quotation marks omitted). "Therefore, an official's erroneous exercise of delegated power is insufficient to invoke the exception." *Id.* "Official action is not ultra vires or invalid if based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so." *Id.* at 1229-30. Hence, "the mere allegation that an officer acted wrongfully does not establish that the officer, in committing the alleged wrong, was not exercising the powers delegated to him by the sovereign." *Id.* at 1230. Under these governing principles, we conclude that DOL had statutory authority to issue the subpoena, and any error DOL made regarding FLSA coverage was an error of fact or law that does not invoke the exception.

We are unpersuaded by CSG's principal argument to the contrary. CSG contends that, because this case was decided on a motion to dismiss, we must presume the truth of the allegation in its complaint that its members are partners and not subject to the FLSA. Because of that presumed fact, the argument goes, DOL was not statutorily empowered to issue a subpoena for documents related to FLSA violations (as opposed to coverage), and the ultra vires exception applies. But

whether DOL was empowered by statute to issue the subpoena is a separate question from whether DOL erred in carrying out its delegated authority: "[T]he question of whether a government official acted ultra vires is quite different from the question of whether that same official acted erroneously as a matter of law." *Wyoming*, 279 F.3d at 1230. Thus, any error by the DOL in preliminarily finding that CSG's partners are employees does not satisfy the ultra vires exception.

The remainder of CSG's arguments reduce to whether CSG can contest coverage in court prior to complying with the subpoena. That issue has nothing to do with whether DOL acted ultra vires in issuing the subpoena. It is the focus of the appeal in Case. No. 12-4028, to which we now turn.

### B. Case No. 12-4028

"We review a district court's rulings on subpoenas for an abuse of discretion." *Dillon Cos., Inc.*, 310 F.3d at 1274 (internal quotation marks omitted). This appeal presents a legal question, and an error of law is an abuse of discretion, *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009).

CSG complains that the district court's failure to consider the merits of its coverage defense to enforcement of the subpoena is contrary to a long line of Supreme Court and Circuit Court cases and violated its Fifth Amendment due process rights. CSG also claims that enforcement of the subpoena violated its Fourth Amendment right to be free of unreasonable searches. Both of these arguments rest on CSG's contention that a coverage defense is appropriate in an enforcement action,

and in support of that argument, CSG cites many cases for the general proposition that a subpoena recipient may make "appropriate defense" in such an action. *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 217 (1946) (*Oklahoma Press II*); *see also Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (substantially the same); *United States v. Powell*, 379 U.S. 48, 58 (1964) (substantially the same); *Reisman v. Caplin*, 375 U.S. 440, 449 (1964) (substantially the same); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 49 (1938) (same); *NLRB v. Interbake Foods*, 637 F.3d 492, 499 (4th Cir. 2011) (same); *Mobil Exploration & Producing U.S., Inc. v. Dep't of Interior*, 180 F.3d 1192, 1199 (10th Cir. 1999) (substantially the same).

We have no quarrel with this general proposition, but it begs the question whether CSG's coverage defense is an "appropriate" one. Our conclusion that CSG's coverage defense is not permissible in a subpoena enforcement action is governed by *Endicott Johnson v. Perkins*, 317 U.S. 501 (1943), our opinion in *Oklahoma Press Publishing Co. v. Walling*, 147 F.2d 658 (1945) (*Oklahoma Press I*), and the Supreme Court's affirmance of that judgment in *Oklahoma Press II*.

In *Endicott Johnson*, the DOL brought a subpoena enforcement action under the Walsh-Healy Act, alleging that it "'had reason to believe' the employees in question were covered." 317 U.S. at 508. The district court refused to enforce the subpoena, tried the coverage issue itself, and determined that there was no coverage. The Supreme Court disapproved this procedure, stating that the district court was not "authorized to decide the question of coverage itself. The evidence sought by the

subpoena was not plainly incompetent or irrelevant to any lawful purpose of the

Secretary [of Labor]." *Id.* at 509. The Court reasoned that the district court had no

power to control whether the DOL determined coverage before examining potential

violations, explaining that a ruling to the contrary

> would require the Secretary in order to get evidence of violation either
> to allege she had decided the issue of coverage before the hearing or to
> sever the issues for separate hearing and decision. The former would be
> of dubious propriety, and the latter of doubtful practicality. The
> Secretary is given no power to investigate mere coverage, as such, or to
> make findings thereon except as incident to trial of the issue of
> violation. No doubt she would have discretion to take up the issues of
> coverage for separate and earlier trial if she saw fit. Or, in a case such
> as the one revealed by the pleadings in this one, she might find it
> advisable to begin by examining the payroll, for if there were no
> underpayments found, the issue of coverage would be academic. On the
> admitted facts of the case the District Court had no authority to control
> her procedure or to condition enforcement of her subpoenas upon her
> first reaching and announcing a decision on some of the issues in her
> administrative proceeding.

317 U.S. at 508-09.[4]

We took up a coverage defense in *Oklahoma Press I*, where a DOL subpoena

sought data relevant to both FLSA coverage and FLSA violations. 147 F.2d at 662.

We stated that the recipient of a DOL subpoena may not challenge coverage in the

---

[4]     Although this case involved the Walsh-Healy Act, the DOL's investigatory
powers are materially similar under the FLSA, so we see no reason to distinguish
*Endicott-Johnson* on this ground. *See Oklahoma Press II*, 327 U.S. at 211 (stating
that it would be "anomalous to hold" that a district court not determine coverage in a
Walsh-Healy Act subpoena enforcement proceeding but could do so in an FLSA
case).

- 10 -

enforcement proceeding and that the district court only needs assurance that there is a

reasonable ground for the investigation:

> [I]t is plain that appellant is not entitled to an adjudication of actual
> coverage as a prerequisite to the enforcement of the subpoena, rather the
> orderly and efficient enforcement of the [FLSA] within the framework
> of the constitutional rights of the parties involved, require only that the
> District Court have "the assurance that it is not giving judicial sanction
> and force to unwarranted and arbitrary action, but that reasonable
> grounds exist for making the investigation."

*Id.* (quoting *Walling v. Benson*, 137 F.2d 501, 504 (8th Cir. 1943)).

In *Oklahoma Press II*, the Supreme Court affirmed *Oklahoma Press I*.  *See*

327 U.S. at 189-90, 214-15.  DOL relies on *Oklahoma Press II* for the principle that

it may issue a subpoena prior to determining FLSA coverage.  CSG insists that, in

relevant part, *Oklahoma Press II* is limited to the proposition that DOL has subpoena

power to obtain information bearing only on the coverage question because the Court

stated that "Congress has authorized the Administrator [of the DOL's Wage and Hour

Division], rather than the district courts in the first instance, to determine the

question of coverage in the preliminary investigation of possibly existing violations"

and gave the Administrator "subpoena power for securing evidence *upon that*

*question*."  327 U.S. at 214 (emphasis added).  CSG reads the italicized phrase as a

limitation on the scope of the subpoena power prior to a determination of coverage.

We do not think this isolated statement captures the entirety of the Supreme

Court's decision in *Oklahoma Press II*.  In its analysis, the Court relied in part on

*Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41 (1938).  *Myers* was not a

- 11 -

subpoena enforcement action but "a suit to enjoin the National Labor Relations Board [NLRB] from holding a hearing upon a complaint against an employer alleged to be engaged in unfair labor practices under the Wagner Act." *Oklahoma Press II*, 327 U.S. at 211. *Myers* "held that the District Court was without jurisdiction to enjoin the hearing," *id.* at 212, which "required an investigation and determination of coverage," *id.* at 211. The *Oklahoma Press II* Court stated that *Myers*'s "necessary effect was to rule that it was not 'an appropriate defense' that coverage had not been determined prior to the hearing *or, it would seem necessarily to follow, prior to the [NLRB'S] preliminary investigation of violation*." *Id.* at 212 (emphasis added). The Court then reasoned that "[if] this is true in the case of the [NLRB], it would seem to be equally true in that of the Administrator." *Id.* In a footnote, the Court acknowledged that the NLRB proceeding in *Myers* was quasi-judicial and the Administrator's investigation under the FLSA was "only preliminary to instituting proceedings in court." *Id.* at 212 n.51. But the Court found this was not a material distinction because the NLRB

> also had preliminary investigative authority, incidental to preparation for the hearing, to which its subpoena power applies, . . . and as we have said, if the courts are forbidden to determine coverage prior to the Board's quasi-judicial proceeding for deciding that question, it would seem necessarily to follow that they are forbidden also to decide it prior to the Board's preliminary investigation to determine whether the proceeding shall be instituted.

*Id.* The Court concluded that "[t]he mere fact that the first stage of formal adjudication is administrative in the one case and judicial in the other would seem to

- 12 -

make no difference with the power of Congress to authorize either the preliminary investigation or the use of the subpoena power in aid of it." *Id.*

What we draw from our preceding discussion is that *Endicott-Johnson* and the *Oklahoma Press* cases stand for the proposition that FLSA coverage is generally not an appropriate defense in a DOL subpoena enforcement action, even if the subpoena is not limited to information relevant to coverage but also demands data relevant to possible FLSA violations. Indeed, we agree with the Eighth Circuit that these cases stand for the "well-settled" rule "that a subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute." *Donovan v. Shaw*, 668 F.2d 985, 989 (8th Cir. 1982).

To the extent the rule admits exceptions, all but one of the cases CSG cites in support of that notion allowed defenses to be asserted in subpoena enforcement actions where resolution turned on a purely legal question, *see EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1073 (9th Cir. 2001); *Reich v. Great Lakes Indian Fish & Wildlife Comm'n*, 4 F.3d 490, 491-92 (7th Cir. 1993); *EEOC v. Cherokee Nation*, 871 F.2d 937, 938 & n.1 (10th Cir. 1989); *United States v. Frontier Airlines, Inc.*, 563 F.2d 1008, 1009 (10th Cir. 1977), or where it was facially obvious that the subpoena recipient was wholly outside the coverage of the relevant statutory regime, *see EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 700 (7th Cir. 2002); *EEOC v. Ocean City Police Dep't*, 820 F.2d 1378, 1382 (4th Cir. 1987), *vacated on other grounds*, 486 U.S. 1019 (1988); *Walling*, 137 F.2d at 505. CSG's coverage defense

does not involve a pure question of law, and it is not facially obvious that CSG lies wholly outside the FLSA. Instead, whether CSG's members are employees within the meaning of the FLSA is determined by applying the economic reality test, which involves a mixed question of fact and law. *Dole v. Snell*, 875 F.2d 802, 804-05 (10th Cir. 1989).

CSG has pointed to only one judicial decision, *General Tobacco & Grocery Co. v. Fleming*, 125 F.2d 596, 597-98, 602 (6th Cir. 1942), permitting a coverage defense requiring a factual inquiry where coverage was not facially lacking. However, in *Oklahoma Press I*, 147 F.2d at 662 n.3, we rejected *General Tobacco*. And the Ninth Circuit, citing *Endicott-Johnson* and *Oklahoma Press II*, has expressly recognized that "factual challenges based on a lack of statutory 'coverage' are clearly not permitted" in a subpoena enforcement action. *Karuk Tribe Hous. Auth.*, 260 F.3d at 1077.

In sum, CSG has not persuaded us that its coverage defense falls within any exception to the general rule that coverage defenses may not be raised in a subpoena enforcement proceeding. We see no error in this matter. We therefore conclude that the district court properly refused to consider the merits of CSG's coverage defense.

## III. CONCLUSION

The judgments of the district court are affirmed.

Entered for the Court

David M. Ebel
Circuit Judge

- 14 -